[Civ. No. 2900. First Appellate District, Division Two.—August 13, 1919.]

HARRIET C. LANKTREE, Appellant, v. JOSEPH B. LANKTREE, Respondent.

[1] HUSBAND AND WIFE—COLLUSIVE AGREEMENT TO PROCURE DIVORCE. An agreement between a husband and wife for the settlement of their property rights and for the wife to institute a divorce suit which he should refrain from contesting is contrary to public policy.

---

1. Validity of contract intended to facilitate procuring of divorce, notes, 11 Ann. Cas. 377; Ann. Cas. 1915A, 811; Ann. Cas. 1918E, 902.

[2] ID.—DECREE OBTAINED THROUGH COLLUSION—POWER OF COURT TO SET ASIDE.—Where such collusion appears, the divorce should be denied; and if the court has not lost jurisdiction, a decree procured pursuant to such collusive agreement should be set aside on suggestion, and may be set aside by the court of its own motion.

[3] ID.—COLLUSIVE DECREE FINAL — EQUITY — WHEN INTERFERENCE WARRANTED.—Where a collusive decree has become final, courts of equity will not ordinarily interfere at the instance of either party. To warrant such action there must be a showing of coercion, imposition, or fraud upon the party complaining.

[4] ID.—CRUELTY—COERCION.—Even though the cruelty of the husband was such as to amount to coercion by which the wife was induced to enter into the oral agreement to procure a collusive divorce, that coercion could not have acted upon her when she was represented by counsel.

[5] ID.—ACTION TO SET ASIDE DECREE—PLAINTIFF PARTY TO FRAUD—EQUITY.—Where, in an action in equity to set aside a decree of divorce alleged to have been collusively procured, the complaint shows that the plaintiff herself commenced the collusive suit and fraudulently procured the interlocutory decree, that she was willing to take the benefits of the decree, and rested under it until it became final, the case is not one of equitable cognizance.

[6] ID.—PLAINTIFF'S HANDS NOT CLEAN—EQUITY.—Where it appears by plaintiff's own statements in an action to set aside a decree of divorce alleged to have been collusively procured that her hands are not clean, equity will leave the parties to the transaction where it found them.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

McWilliams & Hatfield for Appellant.

Donahue & Hynes for Respondent.

BRITTAIN, J.—The plaintiff appeals from a judgment entered upon an order sustaining, without leave to amend, a general demurrer to her complaint.

For the purposes of this decision, the facts alleged in the complaint are binding upon both parties and the court. The question is not one of fact, but of law. If the plaintiff's allegations are true, is she entitled to relief? At the instance of a wife who alleges she has procured a collusive decree of

divorce, will a court of equity set it aside because she also alleges in substance that she bartered her marital rights for a smaller sum than she might have exacted if the other party to the collusive agreement had not misrepresented the amount of his property?

In the briefs authorities are not cited nor is there any serious argument upon the legal effect of the plaintiff's allegations in regard to her having procured the collusive decree. The argument on one side is upon the policy of the law to uphold the marital relation; on the other, upon the principle that to warrant a court of equity to set aside a former judgment, extrinsic fraud must be shown. The determination of the larger question concerning the fraud which the plaintiff avers she practiced upon the court renders unnecessary lengthy consideration of the other matters argued in the briefs.

[1] The plaintiff alleged that the parties were married in 1881 and continued to live together as man and wife for thirty-six years; that early in 1917 the husband requested his wife to enter into an agreement with him for the settlement of their property rights and for the wife to institute a divorce suit which he should refrain from contesting; and that the plaintiff refused to consent to this agreement. Such an agreement is contrary to public policy. [2] When collusion appears the divorce must be denied. (Civ. Code, sec. 111, subd. 2; Civ. Code, sec. 114; *Deyoe* v. *Superior Court,* 140 Cal. 482, [98 Am. St. Rep. 73, 74 Pac. 28].) If the court has not lost jurisdiction, such a decree should be set aside on suggestion, and may be set aside by the court of its own motion. (*Rehfuss* v. *Rehfuss,* 169 Cal. 91, [145 Pac. 1020].)

Subsequently, the plaintiff alleged that the husband engaged in a series of acts and statements of a cruel nature, as a result of which the plaintiff suffered physical and mental breakdown, and that while in this condition she was induced to make the very agreement she had before rejected, which she in terms describes in her complaint as "said collusive agreement for the securing of a decree of divorce from the defendant." It is further alleged that pursuant to this agreement the parties entered into a lengthy contract, a copy of which is appended to the complaint in the present suit. Among many other matters it provided for certain money

and property to be given by the husband to the wife. Two days after its date, it is alleged, in further pursuance of the prohibited oral agreement, the plaintiff commenced her action for divorce, in which the defendant defaulted, and the plaintiff procured the interlocutory decree in her favor. There was no appeal, and the time to appeal and to move under section 473 of the Code of Civil Procedure elapsed. The interlocutory decree became a final judgment at the expiration of six months. Nothing remained to be done in the original suit but to enter a formal decree of divorce. No action was taken by the plaintiff in the divorce suit, but on the day of, or the day after, the expiration of the year from the date of the interlocutory decree, the present suit was commenced.

The plaintiff further alleged that the defendant falsely represented to her that he did not desire to marry another, and that in connection with the written agreement for property to be delivered to her he falsely represented the amount of his property. The plaintiff seeks to have the alleged collusive decree of divorce vacated.

[3] Where a collusive decree has become final, courts of equity will not ordinarily interfere at the instance of either party. To warrant such action there must be a showing of coercion, imposition, or fraud upon the party complaining. (*Bancroft* v. *Bancroft*, 178 Cal. 359, [L. R. A. 1918F, 1029, 173 Pac. 579].) [4] Even though the alleged cruelty of the husband was such as to amount to coercion by which the plaintiff was induced to enter into the oral agreement to procure a collusive divorce, that coercion could not have acted upon her when she was represented by counsel, as she must have been to carry the prohibited bargain into effect. If she had told her attorneys or the court that she had been coerced into making the bargain, she might have been fully protected in regard to her marital rights. If she had sought a divorce because of her husband's cruelty, she might have had full disclosure made in regard to his property.

The only allegation of imposition or fraud in regard to the original agreement was the alleged statement that the husband did not desire to marry another. It is unreasonable to suppose the wife's will was so weakened by the husband's alleged cruelty that she consented to the agreement, but would have had strength to resist the bargain if this state-

ment had not been made. The substance of the appellant's claim is that in the property settlement, after the alleged oral bargain and in pursuance of it, the husband deceived her in regard to the amount of his property, whereby she was induced to accept a ranch valued at twelve thousand dollars, $250 in cash, and forty dollars per month so long as she remained unmarried during his lifetime, and an additional thirty-five dollars per month for one year. The plaintiff alleged the husband represented that this agreement would be fair and equitable for her and that it would leave him practically penniless and bankrupt. So long as she believed she was getting all it was possible for him to give she was satisfied. She commenced a collusive suit, she fraudulently procured the interlocutory decree, she was willing to take the benefits of the decree, and she rested under it until it became final.

[5] The case does not appear to be one of equitable cognizance. The allegations of the complaint are not sufficient to move a court of equity to reopen a matter finally adjudicated. (*United States* v. *Throckmorton,* 98 U. S. 61, [25 L. Ed. 93, see, also, Rose's U. S. Notes].) If the plaintiff had been without fault and the facts had warranted it, deficiencies in the complaint might have been supplied by amendment, but the plaintiff was not free from fault. [6] Her affirmative allegations regarding her own conduct cannot be changed by any proper amendment. By her own statements it appears her hands are not clean. (*Gunter* v. *Laffan,* 7 Cal. 588.) The agreement which the plaintiff alleges she made is one of the kind described by the supreme court in the case of *Beard* v. *Beard,* 65 Cal. 354, [4 Pac. 229] : "It was a contract which contemplated the perpetration of a fraud upon a court of justice, and we think it the duty of courts to discountenance and discourage such transactions to the utmost limit of their power." Equity will leave parties to fraudulent transactions where they have placed themselves. (*Mitchell* v. *Cline,* 84 Cal. 409, [24 Pac. 164].)

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.