[Civ. No. 5531. Third Appellate District.—August 22, 1936.]

HAZEL EDGAR KEGLEY, Respondent, v. CARL S. KEGLEY, Appellant.

Burger Tinglof and Manuel Ruiz, Jr., for Appellant.

Nichols, Cooper & Hickson for Respondent.

PULLEN, P. J.—Plaintiff and defendant were married in Los Angeles in 1921. Being unable to live amicably as

husband and wife, defendant suggested to plaintiff that a legal and valid divorce could be obtained through the courts of Mexico easily and without publicity. To this, plaintiff agreed, and they together called upon an attorney in Los Angeles, where plaintiff and defendant had continuously resided since their marriage, and directed this attorney to take the necessary steps to obtain such a divorce for them. Accordingly a petition for a divorce upon the ground of incompatibility was prepared and filed in the civil court of Bravos district, state of Chihuahua, Mexico, wherein Carl S. Kegley was plaintiff and Hazel Edgar Kegley was defendant. At the time of filing this petition Hazel Kegley also filed a so-called confession of judgment wherein she admitted the allegations of the complaint and submitted herself to the jurisdiction of the court and asked that the bonds of matrimony be dissolved.

Thereafter, and we may assume in accordance with all of the legal requirements of the laws of the state of Chihuahua, a decree of divorce was granted to Kegley. The next day he went from Los Angeles to Arizona and was married to a woman other than Hazel Kegley. About three months after the issuance of the decree in Chihuahua, Hazel Kegley, as plaintiff, filed an action for divorce in Los Angeles. To this complaint Carl Kegley, as defendant, filed an answer setting up the Mexican divorce, and prayed that the action filed by plaintiff be dismissed.

After a trial upon the issues thus presented, the court held the purported decree of divorce obtained in the state of Chihuahua was invalid, and granted the divorce to plaintiff. From that judgment Carl Kegley has appealed, claiming that Hazel Kegley the plaintiff therein, was estopped by her actions and participation in the Mexican divorce to now attack the decree there granted.

Hazel Kegley as respondent therein, claims that appellant, having failed to plead estoppel in his answer in the proceedings in the Los Angeles courts, cannot now raise that question on appeal. She also claims that she was not fully informed upon the law and the facts but relied upon the assurance of her husband, who was an attorney, that a Mexican divorce decree would be valid in California, and thereby was not estopped.

In support of that contention she cites and relies upon the cases of *Bisconer* v. *Billing,* 71 Cal. App. 779 [236 Pac. 329]; *Eaton* v. *Wilkins,* 163 Cal. 742 [127 Pac. 71]; *Greenbaum* v. *Greenbaum,* 147 Misc. 411 [263 N. Y. Supp. 774]; 10 Cal. Jur. 632.

Both of these questions we will pass, and consider the contention of appellant that the wife, by her consent and participation in the proceedings in Mexico, cannot now be heard to attack the validity of the Mexican divorce and the further question as to whether, as a matter of public policy, estoppel can be here invoked.

If no appearance had been made by Mrs. Kegley in the proceedings pending in Chihuahua, it is obvious that under no theory could it be claimed that the courts of that country had acquired jurisdiction over the parties or the subject-matter of the action, for neither plaintiff nor defendant had personally gone into Mexico and established a residence therein, and the residence of both plaintiff and defendant and the situs of the matrimonial domicile remained at all times herein mentioned in California.

The solution of this problem therefore, depends upon the force and effect to be given in this collateral attack to the document filed by Mrs. Kegley in the Mexican proceeding wherein she attempted to confess judgment and authorize a designated individual to accept service for her, and stipulated as to the truth of the allegations in the complaint and joined in the prayer for the dissolution of the marriage.

All sovereignties jealously guard the status of its citizens and will resent any attempt of a foreign state to disturb the domestic relations of those residing within its borders. Therefore, before a state can lawfully presume to pass upon such a problem as here presented, one of the parties at least must have been a *bona fide* resident therein. It is here claimed, however, that the defendant having submitted in writing to the jurisdiction of the foreign tribunal, she cannot now be heard to question its authority. An action in divorce, however, is not an action between the parties alone; it is the theory, here at least, that there are three parties involved, the husband and the wife who represent their respective interests, and the state protecting the morals of the community, to see that neither by collusion nor connivance the status of marriage will be reduced to a

matter of temporary convenience. If the state is a party then of course neither plaintiff nor defendant could by consent confer jurisdiction upon the courts of Mexico over the third party, viz.: the state, and the state not having consented to the courts of Chihuahua passing upon the marriage status of those domiciled within its boundaries, the decree cannot be binding within its jurisdiction. Under the theory of appellant a foreign state could enact a law that merely upon the appearance of a dissatisfied husband or wife, a final decree could be granted merely by the making of a request, but such a revolutionary procedure we are sure, would not be tolerated by the courts of California. Although the courts in such a proceeding would perhaps have jurisdiction of the individuals, they could not have jurisdiction of the subject-matter of the action, that is the marriage relation, the status of the parties. The courts of this state also have sole and exclusive jurisdiction over the status of those domiciled within its ·boundaries. (*Delanoy* v. *Delanoy,* 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321].) This case is itself a brief on the invalidity of the Mexican decree.

■ The rule is also well settled that a decree of divorce may be attacked collaterally in the court of another state by proof that the court granting it had no jurisdiction because of want of domicile by the plaintiff even when the record purports to show such jurisdiction. That jurisdiction of the subject-matter cannot be conferred by estoppel, is declared in *Lindsay-Strathmore Irr. Co.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056], and the many cases there cited. If the subject-matter is not within the jurisdiction of the court that defect cannot be supplied by consent or estoppel of the parties. (*Marin Municipal Water Dist.* v. *North Coast Water Co.,* 178 Cal. 324 [173 Pac. 473]; *Yore* v. *Superior Court,* 108 Cal. 431 [41 Pac. 477].)

■ It appears without dispute, and it is not denied that the divorce secured in Mexico is a "mail order" divorce, and the matrimonial domicile of the parties was at all times in the state of California, and both of the parties were, at the time the petition was filed in the court of Chihuahua, and also at the time of the granting of the decree therein, residents of the county of Los Angeles and domiciled· therein, and were physically within the boundaries of

the state of California, and neither of them were, at any time, in the Republic of Mexico.

■ A foreign divorce obtained through assumed residence is not in good faith, and is open to attack in the state of the true matrimonial domicile and the parties sought to be bound by it may always impeach its validity and escape its effect by showing that the court which rendered it had no jurisdiction over the parties or the subject-matter of the action, and its jurisdiction may be controverted by extraneous evidence. (*Kadello* v. *Kadello,* 220 Cal. 1 [29 Pac. (2d) 171]; *Delanoy* v. *Delanoy,* 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321]; *Galloway* v. *Galloway,* 116 Cal. 478 [2 Pac. (2d) 842]; *Broder* v. *Broder,* 122 Cal. App. 296 [10 Pac. (2d) 182]; *Warren* v. *Warren,* 127 Cal. App. 231 [15. Pac. (2d) 556]; *Steinbroner* v. *Steinbroner,* 30 Cal. App. 673 [159 Pac. 235]; *Fox* v. *Mick,* 20 Cal. App. 599 [129 Pac. 972]; *Thompson* v. *Whitman,* 18 Wall. 357 [21 L. Ed. 897]; *Hanley* v. *Donoghue,* 116 U. S. 1 [6 Sup. Ct. 242, 29 L. Ed. 535].)

■ A further answer to the contention of appellant herein is that the Mexican court, not having acquired jurisdiction either of the parties or of the *res,* the parties could not confer such jurisdiction by mutual consent (*Ryder* v. *Ryder,* 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069]; *Anthony* v. *Tarpley,* 45 Cal. App. 72 [187 Pac. 779]), and it has repeatedly been held that any contract between the parties having for its object the dissolution of marriage or facilitating that result is void against public policy. (*Roberts* v. *Roberts,* 83 Cal. App. 345 [256 Pac. 826]; *Whiting* v. *Whiting,* 62 Cal. App. 157 [216 Pac. 91]; *Flynn* v. *Flynn,* 171 Cal. 746 [154 Pac. 837].)

In *Flynn* v. *Flynn, supra,* it is said: "Under our law, an action for divorce is *sui generis.* The well settled policy of the law is to protect the marriage relation and to prevent its dissolution in any case, even where the parties consent to or desire its dissolution, unless cause recognized by the law as warranting the same exists."

Also in *Rehfuss* v. *Rehfuss,* 169 Cal. 86 [145 Pac. 1020], it is said: "Where an attempt is made through the courts to undo a marriage, the State becomes in a sense a party to the proceeding, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful

cause shown by the real facts of the case, nor unless those conditions are found to exist at the time the decree is made upon which the state permits a divorce to be granted. The state has an interest in the maintenance of the marriage tie which neither the collusion nor the negligence of the parties can impair.''

We are not unmindful of the fact that in some instances our courts have applied the principle of estoppel to an otherwise invalid divorce. We have in mind the case of *Bruguiere* v. *Bruguiere*, 172 Cal. 199 [155 Pac. 988, Ann. Cas. 1917E, 122]. In that case the wife had remarried and had brought suit for separate maintenance and support, claiming the divorce was invalid. There the action before the court involved property interests only, concerning which the parties might lawfully contract. Furthermore, the court in the Bruguiere case held the estoppel arose from the plaintiff's remarriage. Plaintiff in this case has not remarried. In the case of *Bancroft* v. *Bancroft*, 178 Cal. 359 [173 Pac. 579, L. R. A. 1918F, 1029], the wife, when informed of the final decree acquiesced therein and proceeded to act thereon by herself entering into another marriage contract. In that case the court refused to assist the parties because of their fraud, and furthermore the jurisdiction in that case could not be questioned because the parties had resided in the city of San Diego for many years prior to the instituting of the divorce proceedings. The court there said: ''One who seeks relief in an independent action should be required to make an affirmative showing of some equitable consideration or of some good reason sounding in public policy sufficient to justify the interference of equity with the crystallized status of the parties in the particular case.''

In the case before us we believe there is a good reason sounding in public policy why the decree should not be recognized. Other cases are cited wherein the courts having jurisdiction have entered a decree which one of the parties thereto afterwards attempted to set aside alleging fraud and collusion. Such cases differ from the instant case in that here the Mexican courts had no jurisdiction. The trial court so found, and this finding is not attacked on appeal.

We are therefore of the opinion that the judgment appealed from should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 19, 1936.