[Civ. No. 11840.   First Dist., Div. Two.   Jan. 21, 1942.]

MURIEL K. DAVIS, Respondent, v. PORTER H. DAVIS, Appellant.

Lounibos & Lounibos and Burnett & Burnett for Appellant.

A. Brooks Berlin and Alvin A. Lobree for Respondent.

DOOLING, J. pro tem.—This is an appeal by defendant husband from a judgment allowing the plaintiff wife the sum of $60 per month for separate maintenance. The husband pleaded in defense an agreement made and entered into between himself and his wife in March of 1936 wherein she agreed to waive all further claim upon him for support and maintenance. The court found as to this agreement that it was executed by plaintiff without sufficient consideration and was not voluntarily made by plaintiff, but that she was induced to sign said property settlement agreement by means of duress, and undue influence exercised upon her, and fraud practiced upon her by said defendant.

The chief attack on appeal is upon this finding, appellant claiming that it finds no support in the evidence.

The evidence shows that appellant husband left his wife about November 3, 1935 and left the State of California remaining outside the state until shortly before the execution of the agreement in question, and was not seen again by the wife until after its execution. During his absence from the state and commencing shortly after his departure he engaged in a course of conduct calculated to deprive his wife of all means of support and reduce her to such a necessitous condition that she might more readily agree to the agreement which the court found to be supported by insufficient consideration. About the time of his departure an agreement waiving all of her rights against defendant in consideration of the payment to her of $1,000 and some furniture was forwarded for her signature by her husband's attorney. This she refused to sign, although she received a letter from her

husband's attorney advising her that unless she signed the agreement the funds in a joint account, which was the only source from which she could obtain money during her husband's absence from the state, would be withdrawn. The bulk of the account was withdrawn by the husband leaving only a trifling amount available to the wife. On November 25, 1935, the husband's attorney sent a letter to the wife's landlord that the husband would not longer be responsible for her rent. A similar notice was sent to the store from which she had theretofore purchased food on the credit of her husband and he likewise disclaimed liability for gas and electricity used in her apartment. The husband testified that most of these things were done by his direction. Having thus effectually reduced his wife to penury while he was outside the state, and she having in the meantime contracted bills for her necessary support, the agreement in question was presented to her for signature. By its terms she was to receive $750 in cash and $2,250 was to be placed in escrow in a designated bank for 30 days, during which time the escrow holder was to pay all bills theretofore contracted by her, and at the end of the escrow period to pay her the balance if any balance remained. As a result she received in cash a little more than $1,600. By the agreement she waived all rights of every kind against her husband or in his property.

It should also be mentioned that the previous year the husband had filed suit for divorce and then left the state and that when a cross-complaint asking for support was served upon his attorneys the action was dismissed a few minutes before the cross-complaint was filed thereby defeating her attempt at that time to obtain support. Subsequently the parties became reconciled but the trial court was entitled to consider this prior conduct of the husband and the effect that the recollection of it might have on the mind of the wife in inducing her to sign the later agreement.

Section 158 of the Civil Code provides that in transactions between husband and wife they are subject "to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts." Turning to that title we find that by section 2228 "a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein

over the latter ·by the slightest misrepresentation, conceal-
ment, threat, or adverse pressure of any kind.''

Under the evidence above recited the court was justified
in finding that the execution of the agreement by plaintiff
was not binding on her. Contracts of this character are always
subject to the close scrutiny of the courts. (*Moog* v. *Moog,*
203 Cal. 406 [264 Pac. 490]; *Steinmetz* v. *Steinmetz,* 67 Cal.
App. 195 [227 Pac. 713]; *Loveren* v. *Loveren,* 106 Cal. 509
[39 Pac. 801].) The wife had the right to continued support
from her husband. (*Clark* v. *Clark,* 203 Cal. 441 [264 Pac.
761].) This he deliberately deprived her of at the same time
absenting himself from the state so that she could have no
effective recourse against him. As a result her debts mounted
to over $1,000 and she was deprived of both funds and credit.
In this condition she signed the agreement, as she testified
''paying the bills and a slight sum left over.'' Measuring
the facts against the code provision that a trustee ''may not
obtain any advantage . . . by the slightest . . . adverse pres-
sure of any kind'' we cannot say that the finding attacked
did not find support in the evidence.

██ The wife was not required to tender back the
amount which she received under the agreement and which
was needed and used by her in the meantime for her neces-
sary support (*Locke Paddon* v. *Locke Paddon,* 194 Cal. 73,
83 [227 Pac. 715]), and when a contract obtained through
abuse of confidential relations is pleaded defensively the plain-
tiff can always attack its validity. (*Estate of Cover,* 188 Cal.
133, 140 [204 Pac. 583].) Nor is she estopped to do so by the
fact that she has used the funds in the meantime for her
support. (*Locke Paddon* v. *Locke Paddon, supra; Estate of
Cover, supra.*)

██ The evidence was sufficient to justify the court in find-
ing that defendant had the ability to pay $60 per month. He
testified to receiving $13,000 from the sale of stock in a dairy
a few months before the trial, to the ownership of other prop-
erty worth at least $5,000 and while he testified that he was
not engaged in any occupation at the time of the trial he
had previously for a number of years been employed as the
manager of a dairy.

The judgment appealed from is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.