[Civ. No. 15818. Second Dist., Div. Two. Oct. 17, 1947.]

ROSALIE THERESA ROBERTS, Appellant, v. LEE ROBERTS, Respondent.

Hardy and Hardy and Carlos S. Hardy for Appellant.

Reynolds, Painter & Cherniss and Louis Miller for Respondent.

MOORE, P. J.—By her amended complaint appellant sued (1) to annul a decree of divorce granted to herself in the State of Nevada on the grounds that (a) such decree was obtained through her collusion with respondent and that (b) the Nevada court was without jurisdiction of the parties; (2) to set aside a property settlement agreement executed by her as having been effected by means of respondent's fraudulent representations and without independent legal advice; and (3) for a judgment dissolving the marriage of the parties. This appeal is from the judgment of dismissal after appellant had declined further to amend, a demurrer having been sustained.

### THE PLEADING ABRIDGED

The third count of the pleading is for a divorce. It is in orthodox form and contains appropriate declarations as to (1) the marriage, (2) the lawful issue, (3) the ownership of community property, (4) respondent's acts of extreme cruelty, (5) appellant's need for support and respondent's ability to provide, and (6) appellant's residence in Los Angeles County for more than one year. The joinder of count three was correct practice although it was triable only in the event of the success of count one. Omitting the conclusions as surplusage the substance of count one is as follows:

### COUNT ONE

I and II. The parties were married May 10, 1941, and were thereafter until October, 1944, husband and wife. With their one child, age four, they have resided continuously in Los Angeles County. III. On August 30, 1944, they owned a home at Long Beach, the title to which stood in defendant's name. Large sums of community funds have been invested in the home and furnishings, the amount of which is unknown to plaintiff but is known to defendant.

IV. On and immediately prior to said last-mentioned date defendant stated to plaintiff that although he loved

her and their child and desired to do all in his power to provide for them, yet it would be better for him and his business and for the advancement of his financial affairs, and he would be able to do more for the support and care of plaintiff and their child, if he were not married to plaintiff; that she could go to Nevada and within less than two months obtain a divorce, gain a rest and return to their Long Beach home;

V. that if she would proceed at once to Nevada and secure a divorce he would give her $1,000 in cash, $300 as her allowance for three months and would pay all expenses of her trip and of her sojourn at Reno, including costs of court and attorney's fees; during her absence from Long Beach he would employ a nurse and housekeeper to care for the child at home; that immediately following the divorce plaintiff should return to their home and resume the care of the child as well as her marital relations and her position as defendant's wife in their home; that he would place the title of the home in the child and would have its life insured in favor of plaintiff.

VI. The birth of her child had impaired the health of plaintiff, from which she had not recovered on said August 30; plaintiff was then in a weak physical state, highly nervous, mentally distraught by reason of her said infirmities and of defendant's persuasive statements, which facts were well known to defendant. By reason of such afflictions and distress plaintiff was wholly under defendant's control and dominance, as a result of which she could not exercise an independent judgment with respect to said representations but by reason of her physical and mental condition believed his statements to be true and that her best interests would be served by a compliance with his requests.

VII. Plaintiff believed said statements to be true and to have been made in good faith; while in said condition of mind and body and under the control of defendant and believing in the truth and good faith of his statements and promises, on August 30, 1944, plaintiff orally promised to comply with all of defendant's requests, secure a Nevada divorce and return to their home as soon as the decree was obtained.

VIII. Whereupon defendant gave her $100 for one month's support and $100 for her attorney's fee, gave her a round trip ticket to Reno, and stated to her that she

should hurry to Nevada, secure the divorce and return immediately to her home in Long Beach. Subsequently, defendant paid her the two succeeding monthly payments of $100 each. At the time he gave her the ticket defendant gave plaintiff the name and address of a Reno attorney and told her to employ him upon her arrival there. Plaintiff was then without experience in legal matters.

IX. She was ignorant of the laws of Nevada and was not advised as to her rights; she believed it was best to rely upon defendant's statements. She was then under his control and unable to exercise an independent judgment.

X. While relying solely upon such statements and promises, and while under defendant's control, plaintiff, on or about September 1, 1944, left her Long Beach home and her child of two and a half years and entrained for Reno, where she arrived within three days and thereafter filed a complaint for divorce. Defendant promptly filed his written appearance in the proceeding. A decree was entered on October 20, 1944, purporting (1) to dissolve the marriage of the parties on the ground of extreme cruelty, (2) to award plaintiff custody of her child and (3) to direct respondent to pay her $50 monthly for the infant's support until she attains her majority. During plaintiff's sojourn in Reno she continued to be under the dominance of defendant and received his frequent letters directing her to hasten the divorce proceeding and to return home as soon as possible.

XI. In departing from Long Beach for Reno plaintiff did not intend to reside or to remain in Nevada permanently or for an indefinite period, but purposed to stay there only so long as was necessary to secure a divorce and then to return to her Long Beach home. She left Nevada on the very day the decree of divorce was granted, immediately returned to her said Long Beach home, at which she resumed marital relations with defendant at his request, and there continued such relations until December, 1945. She resided in the home at the time of filing the amended complaint, June 11, 1946.

## COUNT TWO

Count two, by express declaration in its first paragraph, adopts only that part of count one which alleges the marriage, the issue and the Los Angeles County residence of both parties.

II. While plaintiff was physically sick and mentally distraught, which was known to defendant, she was under the control and dominance of defendant on August 30, 1944, and by reason of said condition of health and of said control of defendant she was unable to exercise an independent judgment.

III. She then executed a property settlement agreement which purported to settle the property affairs of herself and husband, whereby she relinquished all interest in the home of the parties and in the movable property therein other than her own personal effects and accepted $1,000 as her share of the community property in satisfaction and discharge of defendant's obligation to support her. Such sum was less than plaintiff's interest in the community estate. She will credit such payment upon any sum awarded as her interest in said estate.

IV. Such agreement was prepared by attorneys selected by defendant and was executed by plaintiff without first having an opportunity to gain independent legal advice as to her rights against defendant relating to said community property and to her support by defendant. She was advised and urged by said attorneys and defendant to execute the agreement as being for her best interests. She was then upset and ill, inexperienced in such matters and was not informed of her right to independent legal advice as to her legal position and privileges. The agreement was unfair to plaintiff and was against public policy.

V. Following the execution of the purported agreement the parties continually engaged in marital relations in the family home until December 25, 1945, with the exception of the period of plaintiff's sojourn in Nevada.

The merits of the general demurrer to count one are to be tested by the allegations of fact with respect to (1) the jurisdiction of the Nevada court*, (2) appellant's conscious participa-

---

*Section 9460, Nevada Compiled Laws, provides: "Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of any county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, or in which the parties last cohabited, or if plaintiff shall have resided six weeks in the state before suit be brought, for the following causes, or any other cause provided by law: . . .

Sixth. Extreme cruelty of either party."

tion in imposing upon that court, and (3) the abuse of her confidence by respondent.

### THE MERITS OF COUNT ONE

■ The jurisdiction of any court to grant a divorce is determined by the bona fide domicile of at least one of the spouses. Where neither has established a statutory domicile in the state with honest intentions to reside there permanently or indefinitely, a decree of divorce by a court of such state based upon the simulated residence of the plaintiff only is void. ■ Such decree may be impeached collaterally by extrinsic evidence. This is true notwithstanding either the recitals of such decree or the false testimony given by the plaintiff in support of the judgment. (*Crouch* v. *Crouch*, 28 Cal.2d 243, 249 [169 P.2d 897]; *Williams* v. *North Carolina*, 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366].) The allegations of count one emphasize the facts of (1) appellant's actual and continuous domicile in California, (2) her intention to visit Reno solely for the purpose of obtaining a divorce, (3) her illness and respondent's dominance over her at the time of her departure for and her sojourn in Nevada, (4) her prompt return to Long Beach and the resumption and continuance of the marital relation for more than a year thereafter. Since the Nevada court did not have jurisdiction to determine the cause, its decree is void.

■ In all domestic concerns each state of the Union is to be deemed an independent sovereignty. As such, it is its province and its duty to forbid interference by another state as well as by any foreign power with the status of its own citizens. Unless at least one of the spouses is a resident thereof in good faith, the courts of such sister state or of such foreign power cannot acquire jurisdiction to dissolve the marriage of those who have an established domicile in the state which resents such interference with matters which disturb its social serenity or affect the morals of its inhabitants. ■ Jurisdiction over divorce proceedings of residents of California by the courts of a sister state cannot be conferred by agreement of the litigants. ■ As protector of the morals of her people it is the duty of a court of this commonwealth to prevent the dissolution of a marriage by the decree of a court of another jurisdiction pursuant to the collusion of the spouses. If by surrendering its power it evades the performance of such duty, marriage will ultimately be considered as a formal device and its dissolution freed from legal inhibitions. ■ Not only is a divorce of Cali-

fornia residents by a court of another state void because of the plaintiff's lack of bona fide residence in the foreign state, but it is void also for lack of the court's jurisdiction over the State of California. ■ This state is a party to every marriage contract of its own residents as well as the guardian of their morals. Not only can the litigants by their collusion not confer jurisdiction upon Nevada courts over themselves but neither can they confer such jurisdiction over this state.

■ It therefore follows that a judgment of divorce by a court of Nevada without first having pursuant to its own laws acquired jurisdiction over one of the parties is a void decree and may be impeached in the state of the domicile and its effect erased by showing that the Nevada court had no jurisdiction of the parties. (*Kegley* v. *Kegley*, 16 Cal.App.2d 216, 220 [60 P.2d 482]; *Ryder* v. *Ryder*, 2 Cal.App.2d 426, 433 [37 P.2d 1069].) Such decree may always be attacked for lack of jurisdiction in the foreign court. (*Crouch* v. *Crouch, supra,* 250.)

■ It is equally well settled that the collusion of the parties is sufficient to render the decree voidable even though the court had had jurisdiction and respondent had not fraudulently induced her to institute the Nevada proceeding. (*Ryder* v. *Ryder, supra.*)

■ The contention that appellant is estopped to plead the nullity of a void decree because (1) it was procured by her in an alien jurisdiction and (2) was the result of her instituting the action in another state in collusion with respondent is not supported. Generally, estoppel will not prevail to support either a decree granted by a foreign court without jurisdiction of the parties or a decree obtained by a wife at the direction of her husband. (Code Civ. Proc., § 1916; *Ryder* v. *Ryder, supra; Estate of Bruneman,* 32 Cal.App.2d 606, 608 [90 P.2d 323]; *Kegley* v. *Kegley, supra.*) This rule is emphasized in the instant case by the fraudulent conduct of respondent in inducing appellant to procure a divorce and to visit Nevada for that purpose at his expense. In the Kegley decision whose facts parallel those at bar the appellant urged in support of his plea of estoppel *Bisconer* v. *Billing,* 71 Cal.App. 779 [236 P. 329]; *Eaton* v. *Wilkins,* 163 Cal. 742 [127 P. 71]; and *Bruguiere* v. *Bruguiere,* 172 Cal. 199 [155 P. 988, Ann.Cas. 1917E 122]. The first two are distinguished by their facts and cast no light upon the issues here involved except that in the Bisconer case the court held that there can be no estoppel *in pais* against a plaintiff where he does not know the full truth

of the facts constituting the basis of the alleged estoppel. In the Bruguiere case plaintiff's husband had visited Nevada for the purpose of obtaining a divorce. Although the decree granted him was void for lack of jurisdiction in the court, Mrs. Bruguiere contracted another marriage. After it had been annulled by the court of New York she subsequently sued her first mate for support and maintenance. Because she knew that the Nevada decree purported to dissolve her marriage and to give her freedom to effect a new marital alliance she was estopped to question the validity of the Nevada divorce. She was free to waive all questions of the effect upon her of such decree and accept the status it conferred upon her. The Bruguiere case and many others hold to the doctrine that a remarriage by a spouse who has acknowledged the validity of the void decree estops him from subsequently denying its validity. Because Mrs. Kegley had not remarried the court denied the plea of estoppel filed by her husband, annulled the Mexican decree and granted her a divorce although she had by her wilful appearance in the Mexican court confessed the cruelties alleged.

Appellant's position is not different from that of Mrs. Kegley. While the latter's decree was granted by the court of a sister republic, she there confessed herself in the wrong. While Mrs. Roberts actually sued for the divorce in a sister state, she was persuaded to do so by the fraudulent inducements of her husband. "He was the prime mover in the fraud upon the Nevada Court." (*Estate of Davis*, 38 Cal. App.2d 579, 585 [101 P.2d 761, 102 P.2d 545].) To apply the doctrine of estoppel against her would effectually guarantee the success of every husband who is so base and so clever as to convince his wife that the welfare of herself and her child will be enhanced by the entry of a divorce decree against him in another state. Estoppel is to be applied against wrongdoers, not against the victim of a wrong. (*Harlan* v. *Harlan*, 70 Cal.App.2d 657, 662 [161 P.2d 490]; *Estate of Davis*, *supra*.) It does not operate to defeat positive law or public policy. (*Panzer-Hamilton Co.* v. *Bray*, 96 Cal.App. 460, 464 [274 P. 769].) Where a divorce decree is void it cannot be given validity by estoppel. (*Garman* v. *Garman*, 102 F.2d 272, 274 [70 App.D.C. 4], citing *Kegley* v. *Kegley*, *supra*.) When misapplied, the doctrine of estoppel may be a most effective weapon for the accomplishment of injustice. (19 Am.Jur. 602.)

Respondent attacks count one as though it were purely a fraud action whereby he is accused of obtaining the goods of appellant by his false representations and promises and as though such averments had been made as a basis of recovery. Such is not the office of the allegations of respondent's fraudulent representations and of appellant's physical, nervous and mental infirmities. While the misrepresentations are not traversed and the causes of appellant's bodily and mental ills are not alleged at length, yet the declarations of the pleading show that respondent had the confidence of appellant and that she believed his statement that it was for her own best interest to do as he requested. Her mind and body had been weakened; she was mentally distressed and distraught by reason of her infirmities, and on account of such afflictions was incapable of exercising an independent judgment with respect to respondent's statements. By the demurrer he confesses that while she was debilitated as a result of childbirth and of his demands that she obtain a divorce he told her not only that his own financial interests and welfare would be advanced but also that the best interests of her child and herself would be served by his being divorced from her, and that such divorce quietly obtained in another state would not interfere with her marital relations or rob her of her position as his wife or of living in their Long Beach home. He confesses that he urged her to hasten her departure for Reno; that he supplied her with the name of an attorney residing there who would aid her in consummating the fraud; that he effected her departure within two days after he had gained her promise to go to Nevada to obtain a decree; and that he provided her with all funds necessary for her to accomplish his plans which were a fraud upon the courts of California as well as of Nevada.

Respondent contends that when a wife agrees with her husband that she will visit a foreign jurisdiction to obtain a decree of divorce based upon her simulated residence she cannot thereafter repudiate the decree thus obtained by her. In support of such thesis he cites and quotes from many authorities. By such authorities it is held (1) that in divorce cases, as in others, equity will not interfere with judgments obtained through collusion (*Hendricks* v. *Hendricks*, 216 Cal. 321, 323 [14 P.2d 83]; *Bancroft* v. *Bancroft*, 178 Cal. 359, 364 [173 P. 579, L.R.A. 1918F 1029]; *Ettlinger* v. *Ettlinger*, 46 Cal.App.2d 628, 632 [116 P.2d 482]; *Lanktree* v. *Lanktree*,

42 Cal.App. 648, 652 [183 P. 954]); (2) that where evidence of the alleged coercion, duress or fraud could have been presented to the court or to an attorney of complainant's own choosing during the pendency of the action, seasonably to enable the court to protect the rights of the parties, equity will not disturb the judgment of such court (*Hendricks* v. *Hendricks, supra; Godfrey* v. *Godfrey,* 30 Cal.App.2d 370, 379 [86 P.2d 357]; *Thompson* v. *Thompson,* 38 Cal.App.2d 377 [101 P.2d 160]); (3) that a party who has obtained a decree of divorce upon simulated residence in a foreign jurisdiction is estopped from thereafter attacking the decree as invalid for want of jurisdiction in the court (*Harlan* v. *Harlan, supra; Estate of Davis,* 38 Cal.App.2d 579, 584 [101 P.2d 761, 102 P.2d 545]; *Seymour* v. *Seymour,* 18 Cal.App.2d 481 [64 P.2d 168]; 1 Freeman on Judgments, 5th ed., § 1438; Rest. Conflict of Laws, § 112).

While a number of the cited authorities have already been discussed, neither they nor respondent's thesis are pertinent to the issues presented by count one. In each instance the petitioner who sought to have the foreign decree annulled was a free moral agent in procuring the divorce, or he had sat passively by and knowingly acquiesced in the action of his spouse in seeking the foreign decree, or had financed her litigation, or had enjoyed the fruits of such decree while acknowledging the validity thereof. Appellant here was the agent of respondent in her journey to Nevada and in all that she did while there in employing an attorney and in procuring a decree. No part of it was her wish; neither was it her deed. While weak and ill, she was by fraud persuaded by respondent to consent to visit Nevada, to follow the directions of a Reno attorney designated by respondent who paid him, to remain there until a decree should be entered and then promptly to return to California. Respondent confesses these abominable facts. He is therefore without equity. With unclean hands he attempts to thwart the efforts of the person to whom he owes the highest duty but whom he has foully deceived to her detriment. By raising the equitable plea of estoppel he would silence her at the very threshold of the temple. Under the long-established principles of equity he cannot shield his own perfidious wrongs by use of a plea designed to silence only those who have knowingly invited and accepted the causes of their unhappiness. His own estoppel is estopped. The judgment which she would have annulled by the superior court is the fruitage of

respondent's contempt for good morals and of his disdain for the law of the state which protects him. His citing respected authorities and his chanting fine phrases concerning appellant's procurement of the divorce do not conceal his guilt of sending his own ill wife away from her home and her child to Nevada to obtain a divorce by committing perjury and by imposing upon the courts of that state, knowing that she would return to him immediately to resume the marital status. If the plea of estoppel will permit such a practice it were better that the very foundations of our jurisprudence should crumble into dust and a new structure for the support of righteousness be builded.

### Count One not Barred by Laches

Respondent contends that the filing of this action, April 19, 1946, to annul the Nevada divorce decree of October 20, 1944, is barred by laches, citing *Rudy* v. *Slotwinsky,* 73 Cal.App. 459, 465 [238 P. 783] ; *Wattson* v. *Dillon,* 6 Cal.2d 33, 42 [56 P.2d 220]. So to hold would be error. Upon appellant's return from Reno following the entry of such decree she acted, and was treated, as the lawful wife of respondent until December 25, 1945. As such wife she was his constant companion for over 14 months; sat at his board and occupied his bed. His sudden decision at the Christmas season to drive her from the home and to stand firmly upon the Nevada decree must have administered a shock, requiring some time for her to adjust her senses to the predicament in which the new turn of affairs had left her. Allowing one month for her to reconnoiter the field, she filed the action within less than three months, a part of which time was of necessity consumed by counsel in a study of the case and in the preparation of her pleadings. Such delay is not unreasonable in view of the circumstances alleged. In the Wattson case, *supra,* the action to vacate a final decree was begun seven months after its entry, while in the Rudy case the action to set aside the decree was begun a year after the first judgment. And in neither of them was any such equitable ground for relief alleged as that by appellant herein in addition to the lack of jurisdiction in the Nevada court and the fraud upon the courts of California.

The doctrine of laches is not to be arbitrarily applied. Whether a delay is unreasonable must be adjudged by the circumstances which occasioned it, by the nature of the relief demanded and by a determination that the rights of the defendant or of others have not been prejudiced by the delay.

(*Swart* v. *Johnson,* 48 Cal.App.2d 829, 834 [120 P.2d 699].) It would be unreasonable to say that any right of respondent suffered prejudice by reason of appellant's not having filed her action at an earlier date.

It follows that count one does state a valid cause of action; that by treating its conclusions as harmless surplusage the special demurrers count for nought; that by confession of respondent the Nevada decree is void, and that the third count states a valid cause of action. In view of the foregoing the demurrers to the first and third counts should have been overruled.

### COUNT TWO

As to the second count of the complaint appellant's position is not so favorable. By this cause appellant seeks to have annulled a contract of property settlement executed in this state. An attack upon that agreement is not to be aided by the invalidity of the divorce decree. Neither may it find support in count one except by such of the latter's allegations as were by adoption made a part of count two. Even though by the doctrine of judicial notice this court could determine that the nullity of the Nevada decree is to be read into count two, such fact would not necessarily so support the second count as to exempt it from the statutory rules of pleading by which it must be measured.

■ Since a separate general demurrer was not lodged against count two, only the special demurrers thereto can be considered. (*Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5].) Certain of its allegations are ambiguous, uncertain or unintelligible. ■ To plead that the sum of $1,000 accepted by her as her share of the community property "was less than the interest of plaintiff in said community estate," does not state the extent of plaintiff's interest or the extent of her title in and to the property which she claims was the community estate. (*California Trust Co.* v. *Gustason,* 15 Cal.2d 268, 273 [101 P.2d 74].) Not facts but only a conclusion is declared. In order to have alleged with certainty the detriment suffered by her in accepting $1,000 for her interest in the community estate it was necessary for her not only to describe the property and to allege its reasonable value but also to set out facts disclosing the extent of her community interest. (*Burkett* v. *Griffith,* 90 Cal. 532, 541 [27 P. 527, 25 Am.St.Rep. 151, 13 L.R.A. 707]; *Hencken* v. *City of Morgan Hill,* 21 Cal.App.2d

438, 442 [69 P.2d 462].) The allegations do not make it certain whether the property in question was acquired wholly with community funds or whether a definite portion of the purchase price had been paid by the defendant with his separate funds and a different proportion of the purchase price was paid with community funds. The allegation that $1,000 was less than plaintiff's interest is a mere conclusion; is only inferential and argumentative. Without the curing of such defect the special demurrer is fatal to the pleading. ■ A fact which constitutes an essential element of a cause of action cannot be left to an inference. (*Los Angeles* v. *Signoret,* 50 Cal. 298; *Johnson* v. *Fletcher,* 97 Cal.App. 153, 156 [274 P. 1001].)

■ The allegations of paragraph IV of the second count "that plaintiff was without any opportunity by her to receive independent legal advice as to her rights against the defendant relating to the community property of the parties and to her support and maintenance by him," and "that said purported agreement was unfair and unjust to her . . . and is against public policy and therefore void," are inferential and argumentative statements, conclusions and not direct averments of material facts. (*Hauser* v. *Pacific Gas & Electric Co.,* 133 Cal. App. 222, 225 [23 P.2d 1068]; *Osborn* v. *Hoyt,* 181 Cal. 336, 339 [184 P. 854]; *Baker* v. *Miller,* 190 Cal. 263, 266 [212 P. 11].) No issue of fact is raised by such statements; no facts are alleged to show that the agreement was unfair. Instead of such declarations the pleading should contain averments showing the facts (1) whereby she was debarred from opportunity to obtain independent legal advice, (2) whereby the advice she received was not for her advantage, and (3) from which the injustice of the agreement could be derived.

■ The same vice obtains in the allegation that "plaintiff was also under the influence, control and dominance of defendant." Such language is a conclusion. To have made such charge effective appellant should have declared the facts that might show whether his dominance was due merely to the conjugal relationship or to her fear of denying his wishes or to her fear of losing custody of her child. ■ Also the allegations that "had she been so informed and represented, she would not have entered into and executed the said purported agreement nor have accepted the consideration and benefits to her therein expressed; . . . said purported agreement . . . is unfair and unjust to plaintiff" are mere conclusions.

While count two alleges that the agreement was prepared by counsel of respondent's selection "without any opportunity

by her to receive independent legal advice," thereby implying that appellant was defrauded by respondent, yet there is no allegation that the advice given her was illegal or unwise.

While the pleading sounds primarily in undue influence, it makes no averment that her illness rendered her incapable of understanding the transaction. Since there is no allegation of either fraud, menace or duress, the only attempt to plead an equitable cause is to be found in the language that she was "physically sick and in a highly nervous and mentally distraught state which was well known to defendant; . . . was also under the influence, control and dominance of defendant; that plaintiff was not, by reason of her said condition of health and by reason of said influence, control and dominance, able to exercise independent judgment." Such statements are not ultimate facts but conclusions only, and are not sufficient to constitute a cause of action. (*Estate of Streeton*, 183 Cal. 284, 289 [191 P. 16]; *Munfrey* v. *Cleary*, 75 Cal.App.2d 779 [171 P.2d 750]; *Estate of Sheppard*, 149 Cal. 219, 220 [85 P. 312].)

The second count contains no allegation of an offer to restore the $1,000 paid appellant for her interest in the community estate. There is no allegation of fact to show that her share exceeds or is equal to $1,000. Her offer is not sufficient. There is no allegation by which it can be determined that if the agreement should be annulled she would in event of a valid divorce be entitled to any share of the community estate. The title to the property stands in respondent's name. On a trial it may develop that it is his separate estate. Since the action is for rescission and there is no explanation why she did not return or offer to return the $1,000 the special demurrer is fatal to count two. (*Clanton* v. *Clanton*, 52 Cal. App.2d 550, 554, 556 [126 P.2d 639]; *Hite* v. *Mercantile Trust Co.*, 156 Cal. 765, 767 [106 P. 102].)

Appellant has cited many authorities (*Davis* v. *Davis*, 49 Cal.App.2d 239 [121 P.2d 523]; *Estate of Boeson*, 201 Cal. 36 [255 P. 800]; *Gaines* v. *California Trust Co.*, 48 Cal.App.2d 709 [121 P.2d 28]; *Norris* v. *Norris*, 50 Cal.App.2d 726 [123 P.2d 847]; *Auclair* v. *Auclair*, 72 Cal.App.2d 791 [165 P.2d 527]; *Andrew* v. *Andrew*, 51 Cal.App.2d 451 [125 P.2d 47]; *Streeter* v. *Streeter*, 67 Cal.App.2d 138 [153 P.2d 441]) that would serve to support a complaint where reliance is placed upon undue influence and upon a violation of the confidential relationship. They do not avail her as support for conclusions instead of ultimate facts.

Appellant having declined further to amend her complaint to conform with the rules of pleading this court is without power to grant any relief as to the property settlement. A litigant is entitled to prosecute his cause only by first pleading the nature of relief sought and the ultimate facts by which he deems himself to be entitled thereto under the law. If after the court's ruling that his allegations are ambiguous or uncertain, or unintelligible, he declines to amend and there is no error in the order, affirmance thereof is the only answer to his appeal.

The judgment is affirmed insofar as it relates to the second count. As to the first and third counts it is reversed with instructions to overrule the demurrers as to them.

McComb, J., and Wilson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 15, 1947. Carter, J., and Schauer, J., voted for a hearing.