680 P.2d 1355

**Robert W. ANDRE, Conservator of the Estate of Beatrice Morrow, Conservatee, Plaintiff-Respondent,**

v.

**Kenneth C. MORROW and Billie Jo Morrow, Defendants-Appellants.**

No. 14843.

Supreme Court of Idaho.

April 13, 1984.

William H. Foster, Grangeville, for defendants-appellants.

Theodore O. Creason, Lewiston, for plaintiff-respondent.

DONALDSON, Chief Justice.

Plaintiff-Respondent (André) brought an action in California against defendants-appellants (Morrows) contending that the Morrows had committed a fraud on André's conservatee, Beatrice Morrow. André requested the California court to impose a constructive trust on certain real property located in Idaho, in which the Morrows held legal title and which they had allegedly acquired with the proceeds of the fraud.

On June 13, 1979, while the California case was still pending, André filed a complaint in Idaho County District court based on the identical allegations contained in the California action. André requested the Idaho court to also recognize the existence of a constructive trust in the Idaho property.

After a full trial, the California court rendered judgment on June 20, 1979, for André, awarding him compensatory and punitive damages, and imposing a constructive trust on the Idaho property. The Morrows did not appeal this decision.

On June 27, 1979, André filed a copy of the June 20, 1979, California judgment with the Clerk of the District Court for Nez Perce County, Idaho, pursuant to the Enforcement of Foreign Judgments Act, I.C. §§ 10–1301–1308. The Nez Perce action was commenced to enforce the constructive trust imposed by the California decree.

On July 12, 1979, the California Court issued a Minute Order which ordered that the June 20, 1979 judgment be deemed entered on July 12, 1979. The June 20, 1979 judgment was apparently prematurely entered by the clerk of the court. A new document was not issued to replace the June 20, 1979 judgment, but rather the June 20th judgment received a new entry date.

On December 12, 1979, André amended his Idaho County complaint to include Count XII, which stated that the California judgment had been entered in his behalf. On this basis, André requested the Idaho County court to adopt the California judgment and enforce the equitable decree contained therein. On February 29, 1980, André filed a motion for summary judgment in Idaho County, contending the California judgment should be given full faith and credit in Idaho, and requesting the Idaho court to transfer title to the Idaho property to André. On May 28, 1980, the Idaho County action and the Nez Perce County action were consolidated.

In September, of 1980, the Morrows filed for a Chapter XIII bankruptcy. The Bankruptcy Court vacated the automatic stay

order to allow the Idaho action, based on the California judgment, to proceed. On April 10, 1981, the Bankruptcy Court concluded that the California judgment was entitled to full faith and credit in the bankruptcy court and in the Idaho state courts, and "that to the extent the California Judgment create[d] a constructive trust upon the property in Idaho, as determined by the Idaho state court," the bankruptcy court would recognize and honor such a trust.

On May 26, 1981, André renewed his motion for summary judgment, requesting the court to grant full faith and credit to the California judgment. On February 12, 1982, the Idaho County district Court heard André's motion for summary judgment and the Morrows' motion to dismiss. The court denied the motion to dismiss, and held that the issue of full faith and credit had already been litigated in the bankruptcy Court, and the judgment therein precluded relitigation of the validity of the California judgment. Thus, full faith and credit was given to the California judgment which the court held was entered on July 12, 1979, the effective day of the judgment. The court further held that the issue of when the Idaho property became impressed with the constructive trust had not been fully briefed, and allowed this issue to be resubmitted with additional briefing.

On November 10, 1982, the Idaho County district Court determined that the constructive trust arose in the Idaho property at the time the Morrows acquired the property. The judge ordered the Morrows to

convey the property to André. When the Morrows failed to comply with this order, the court amended the summary judgment and vested all interest in and title to the Idaho property in André. The Morrows have appealed.

## I.

The thrust of this appeal is whether the California judgment is entitled to full faith and credit in Idaho. However, this appeal was taken from the Idaho County district Court's order which granted "res judicata" effect to the Bankruptcy Court's order. We first examine whether the Idaho court erred in granting "res judicata" to the Bankruptcy Court decree.[1]

The Idaho court held that

"[t]he issue of whether the California court's judgment should be given full faith and credit in the Idaho courts was litigated in the bankruptcy court and both parties submitted extensive briefing to the bankruptcy judge on this point. The bankruptcy court decided this issue as stated above, and that issue should not be relitigated in this court. The principal of *res judicata* will be applied."

The doctrine of res judicata generally prevents the relitigation of matters which have proceeded to a final conclusion between the parties to the litigation or their privies. *Shea v. Bader*, 102 Idaho 697, 638 P.2d 894 (1981); *Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976);

---

1. There are two aspects to the doctrine of "res judicata." *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); *C.I.T. Corp. v. Turner*, 248 Miss. 517, 157 So.2d 648 (1963); 46 Am. Jur.2d *Judgments* § 396 (1969). Under the principle of "res judicata" or claim preclusion, a judgment on the merits in a prior proceeding bars a subsequent lawsuit between the same parties or their privies upon the same cause of action. *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982); *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980); *Ramseyer v. Ramseyer*, 98 Idaho 554, 569 P.2d 358 (1977); *Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 208 P. 241 (1922).

The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of issues

actually litigated and decided in another action, even in connection with a different claim or cause of action between the same parties in any subsequent suit. *Shea v. Bader*, 102 Idaho 697, 638 P.2d 894 (1981); *Pocatello Industrial Park Co. v. Steel West, Inc., supra; Yavapai County v. Wilkinson*, 111 Ariz. 530, 534 P.2d 735 (1975); *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973); *Gessell v. Jones*, 149 Mont. 418, 427 P.2d 295 (1967); *King v. City of Seattle*, 84 Wash.2d 239, 525 P.2d 228 (1974); 46 Am.Jur.2d *Judgments* § 415 (1969).

Although the Idaho court referred generally to "res judicata," it is apparent that it was referring specifically to the collateral estoppel part of that doctrine.

*Gaige v. City of Boise*, 91 Idaho 481, 425 P.2d 52 (1967). Thus, when the Idaho court applied res judicata to the issue of whether the California judgment was entitled to full faith and credit, the litigants were foreclosed from relitigating this issue.

One of the necessary prerequisites to granting full faith and credit, is that the rendering court must have had valid jurisdiction. (*See* Part II.A(1)., *infra.*) Appellant asserted, both before the district court and now on appeal, that the California court lacked jurisdiction or competence to render a judgment directly affecting title to real estate in Idaho. However, by granting res judicata effect to the issue of the validity of the California decree, appellant was prevented from litigating in the Idaho courts, whether the California court indeed had jurisdiction. This result is contrary to our holding in *Wright v. Atwood*, 33 Idaho 455, 195 P. 625 (1921), wherein we held that:

> "*[A] judgment by a tribunal without authority, or which exceeds or lies beyond its authority, is necessarily void, and may be shown to be so in collateral proceedings*, even though it be a court of general jurisdiction, because no authority derived from the law can transcend the source from whence it came."

33 Idaho at 462, 195 P. at 627 (emphasis added), *cited with approval in Spaulding v. Childrens' Home Finding and Aid Society of North Idaho, Inc.*, 89 Idaho 10, 25, 402 P.2d 52, 67 (1965). We have also stated that "[a] void judgment is a nullity, and no rights can be based thereon; it can be set aside on motion or can be collaterally attacked at any time." *Prather v. Loyd*, 86 Idaho 45, 50, 382 P.2d 910, 915 (1963) (citations omitted).

■ Thus, the issue of whether a court has exceeded its jurisdiction is always open to collateral attack in Idaho. Hence, the Idaho district court may not grant res judicata effect to the Bankruptcy Court's order, because such an order would prevent any opportunity in the Idaho courts to contest whether the California court indeed had valid jurisdiction.

■ Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory. *Foremost Insurance Co. v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981); *Revello v. Revello*, 100 Idaho 829, 606 P.2d 933 (1979); *Eimco Corp. v. Sims*, 100 Idaho 390, 598 P.2d 538 (1979); *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979). While we disagree with the theory upon which the trial court dismissed appellants' action, we affirm the trial court's order on principles of full faith and credit.

## II.

Article IV, § 1 of the Constitution of the United States provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

■ This Court has previously held that "[t]he purpose of the full faith and credit clause is to integrate and unify the nation by according finality to a prior final judgment issued by another state or federal court." *Mitchell v. Pincock*, 99 Idaho 56, 57, 577 P.2d 343, 344 (1978). However, the United States Supreme Court has held that a judgment has no constitutional claim to a more conclusive or final effect in the forum state than it has in the rendering state. *People ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); *Reynolds v. Stockton*, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464 (1891). Because of this general principle, the recognition and enforcement of a sister state judgment under the full faith and credit clause rests upon the existence of several criteria: (A) a valid and (B) final judgment, which is (C) rendered on the merits of the case. *Simonsen v. Simonsen*, 414 S.W.2d 54 (Tex. Civ.App.1967); *Roberts v. Hodges*, 401 S.W.2d 332 (Tex.Civ.App.1966).

### A(1).

■ For purposes of full faith and credit, a valid judgment itself consists of several factors. First, a valid judgment must have been rendered by a court of competent subject matter jurisdiction, and either jurisdiction over the person or persons whose rights are to be adjudicated, or over the res if the judgment purports to adjudicate interest in a tangible thing. *People ex rel. Halvey v. Halvey, supra; Thorley v. Superior Court,* 78 Cal.App.3d 900, 144 Cal.Rptr. 557 (1978); *Stevens v. Stevens,* 44 Colo.App. 252, 611 P.2d 590 (1980); *Sierra Life Insurance Co. v. Granata,* 99 Idaho 624, 586 P.2d 1068 (1978); *National Equipment Rental, Ltd. v. Taylor,* 225 Kan. 58, 587 P.2d 870 (1978); Restatement (Second) of Conflict of Laws § 92 (1971); 50 C.J.S. *Judgments* § 889 c. (1947).

### A(2).

Second, a valid judgment must be rendered in compliance with the constitutional requirements of due process. *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946); *Thorley v. Superior Court, supra; Barker v. Barker,* 94 N.M. 162, 608 P.2d 138 (1980); *Hines v. Clendenning,* 465 P.2d 460 (Okl.1970); Restatement (Second) of Conflict of Laws § 92 (1971).

### A(3).

Third, a valid judgment is one that is in compliance with the rendering state's requirements for the valid exercise of its power. *Comfort v. Comfort,* 17 Cal.2d 736, 112 P.2d 259 (1941); *Epstein v. Chatham Park, Inc.,* 153 A.2d 180 (Del.Sup.Ct. 1959); *Hanshew v. Mullins,* 385 S.W.2d 186 (Ky.1964); *Murphy v. Murphy,* 581 P.2d 489 (Okl.Ct.App.1978); *In re Marriage of Quenzer & Quenzer,* 42 Or.App. 3, 599 P.2d 1217 (1979); Restatement (Second) of Conflict of Laws § 92 comment j (1971); 50 C.J.S. *Judgments* § 889 c. (1947).

### B.

■ Assuming a judgment meets the criteria for a valid judgment, the second requirement for recognition and enforcement of a foreign judgment, is that the judgment must be a final decision as determined by the law of the state of rendition. *Jones v. Roach,* 118 Ariz. 146, 575 P.2d 345 (Ct.App. 1977); *Thorley v. Superior Court, supra; Newell v. Newell,* 77 Idaho 355, 293 P.2d 663 (1956); Restatement (Second) of Conflict of Laws § 107 (1971); 50 C.J.S. *Judgments* § 889 c. (1947).

### C.

The third element for recognition and enforcement under the full faith and credit clause is a judgment rendered on the merits of the case. *Equity Corporation v. Groves,* 30 Del.Ch. 68, 53 A.2d 505 (1947); *Poindexter v. Willis,* 23 Ohio Misc. 199, 256 N.E.2d 254 (Ohio Ct. of Common Pleas 1970); *Roberts v. Hodges,* 401 S.W.2d 332 (Tex.Civ.App.1966); Restatement (Second) of Conflict of Laws § 110 (1971); 50 C.J.S. *Judgments* § 889 c. (1947).

### III.

We turn now to examine whether the California judgment meets the specified criteria for recognition and enforcement under principles of full faith and credit. The Morrows first contend that the California judgment is not entitled to full faith and credit because the California court lacked jurisdiction to directly affect title to property located in Idaho. The Morrows rely on I.C. § 5–401–1 and *Banbury v. Brailsford,* 66 Idaho 262, 158 P.2d 826 (1945), as support for the proposition that actions relating to real property must be tried in the county where the real property is located.

Appellants' reliance on *Banbury* is misplaced. The holding of *Banbury* was overruled by the subsequent case of *Thompson v. Turner,* 98 Idaho 110, 558 P.2d 1071 (1977). Moreover, in this case, unlike *Banbury* or *Thompson,* we are not concerned with proper venue but rather with proper subject matter and personal jurisdiction.

Appellants' argument that the California court attempted to render a judgment directly affecting title to the Idaho property is without merit. The California judgment determined that appellants held the Idaho

property in constructive trust for the benefit of respondent, and therefore, ordered the appellants to convey to respondent the property so held in trust. We previously stated in *Rowe v. Burrup*, 95 Idaho 747, 518 P.2d 1386 (1974), that a constructive trust arises when one who holds title to property is subject to an equitable duty to convey the property to another in order to prevent unjust enrichment.

"Under a constructive trust theory where the subject property is in possession of the person upon whom the constructive trust is imposed, the traditionally appropriate remedy is to compel the constructive trustee to convey the property to the constructive beneficiary. Scott, The Law of Trusts, § 462, 462.1, 462.3. Bogert & Bogert, Trusts & Trustees, § 472 (2d ed. 1960)."

95 Idaho at 750, 518 P.2d at 1389.

■■■■■ While it is well settled that a judgment of a court of one state cannot directly affect title to realty located in another state, a personal judgment ordering a conveyance of the property by a party is a valid exercise of a court's power.[2] *Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11 (1957); *Idaho Gold Mining Co. v. Winchell*, 6 Idaho 729, 59 P. 533 (1899); *Miller v. Miller*, 109 Misc.2d 982, 441 N.Y.S.2d 339 (1981); *Blue River Sawmills, Ltd. v. Gates*, 225 Or. 439, 358 P.2d 239 (1960); *Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wash.2d 519, 445 P.2d 334 (1968); 50 C.J.S. *Judgments* § 889 h. (1947), Lorenzen, *Application of Full Faith and Credit Clause to Equitable Decrees for the Conveyance of Foreign Land*, 34 Yale L.J. 591 (1925).

### A(1).

■■■ The record discloses that the California court had subject matter jurisdiction over the original fraud action commenced in California by respondent. The California court also had in personam jurisdiction over the litigants to the fraud action. We therefore hold that the California court did not exceed its jurisdiction nor violate any jurisdictional principles in directing appellants to convey the Idaho property to respondent .by the force of an in personam order.

### A(2).

■■■ Secondly, the California judgment was not awarded in violation of either litigant's constitutional due process rights. The record discloses that appellants had notice of the California action initiated by respondent, and both parties had the opportunity to participate in the California action and did so.

### A(3).

■■■ Regarding the third element of a valid judgment, appellants claim that respondent sued on the basis of the *void*, June 20, 1979 judgment (which was prematurely entered by the clerk of the court), and not on the basis of the valid July 12, 1979 judgment (which reflected the corrected entry date from the California court). In essence, appellants claim that a void judgment is not entitled to full faith and credit. While that is true, the evidence reflects that the corrected entry date of

---

**2.** The dissent asserts that the California court lacked authority to impose a trust because it lacked the authority to determine ownership of the property subject to the constructive trust. The following line of cases establish that a foreign court has the power to *indirectly* affect out-of-state property by means of a decree, based on personal jurisdiction over the parties, which determines the parties' personal rights or equities in that property. *Argent v. Argent*, 396 F.2d 695 (D.C.Cir.1968); *Allis v. Allis*, 378 F.2d 721 (5th Cir.1967), *cert. denied*, 389 U.S. 953, 88 S.Ct. 337, 19 L.Ed.2d 363 (1967); *Kennedy v. Morrow*, 77 Ariz. 152, 268 P.2d 326 (1954); *Beeler v. Beeler*, 193 Cal.App.2d 548, 14 Cal.Rptr. 460 (1961); *Barber v. Barber*, 51 Cal.2d 244, 331 P.2d 628 (1958); *Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11 (1957); *Buaas v. Buaas*, 62 Nev. 232, 147 P.2d 495 (1944); *Miller v. Miller*, 109 Misc.2d 982, 441 N.Y.S.2d 339 (1981); *Rozan v. Rozan*, 129 N.W.2d 694 (N.D.1964); *Sharp v. Sharp*, 65 Okl. 76, 166 P. 175 (Okl.1916); Barbour, *The Extra-Territorial Effect of the Equitable Decree*, 17 Mich.L.Rev. 517 (1919).

We are persuaded this is the correct approach and accordingly we confirm the California court's determination of the property rights in the Idaho property between these parties, incident to the California court's imposition of a constructive trust on that property.

July 12, 1979, was presented to both the Bankruptcy Court and the Idaho district Court. Judge Swanstrom determined the effective entry date of the judgment was July 12, 1979. We agree. Despite the corrected entry date of the California judgment, there was only one California judgment, which serves as the basis for this action.

 The dissent contends that the California decree is invalid, and thus not entitled to full faith and credit in Idaho because the California court's findings and conclusions do not furnish a basis for the entry of a constructive trust on the Idaho property. The dissent asserts that there was no finding which traced the proceeds of the fraud to the acquisition of the Idaho realty. It is the view of the majority that inherent in the California judgment was a determination that the proceeds from the fraud were used to acquire the Idaho property. Moreover, even assuming arguendo that the California court neglected to make such a finding, our reading of the California case law does not support the dissent's position—that the California decree would be invalid in California such that it would not be entitled to full faith and credit in Idaho. *In re Ross' Estate*, 180 Cal. 651, 182 P. 752 (1919) (though findings do not support a judgment, such will not render the judgment void on collateral attack); *Johnston v. San Francisco Sav. Union*, 75 Cal. 34, 16 P. 753 (1888); *Millar v. James*, 254 Cal.App.2d 534, 62 Cal.Rptr. 338 (1967). *See also Armstrong v. Armstrong*, 15 Cal.3d 942, 126 Cal.Rptr. 805, 544 P.2d 941 (1976); *In re Keet's Estate*, 15 Cal.2d 328, 100 P.2d 1045 (1940); *Milstein v. Turner*, 89 Cal.App.2d 296, 200 P.2d 799 (1948); *In re Gardiner's Estate*, 45 Cal.App.2d 559, 114 P.2d 643 (1941).

### B.

 The second main element for recognition under principles of full faith and credit is a final judgment. Under the law of California, "a judgment does not become final so long as the action in which it was rendered is pending ... and an action is deemed pending until it is finally determined on appeal or until the time for appeal has passed." *Pacific Gas & Electric Co. v. Nakano*, 12 Cal.2d 711, 87 P.2d 700, 702 (1939) (citations omitted); *see also Bendlage v. Kohlsaat*, 54 Cal.App.2d 136, 128 P.2d 691 (1942). A judgment becomes final if not appealed from within sixty days from the entry of the judgment, unless the time has been extended following a motion for a new trial or a motion to vacate. Cal. Rules of Court 2(a). In the case at bar, appellants' counsel conceded in oral argument that no appeal had been taken from the California decree. Furthermore, the record discloses that the time for appeal has since passed, and the time for appeal was not extended. Thus, the California judgment was a final decree in accordance with California law.

### C.

Thirdly, the judgment must also have been rendered on the merits, and we hold the California judgment was indeed based on the merits of respondent's fraud action against appellants.

 In summary, we hold that the California judgment was a valid and final judgment rendered on the merits, and thus, that judgment is entitled to recognition and enforcement in Idaho under principles of full faith and credit.

Other courts have also held that full faith and credit applies to equity decrees. *McElroy v. McElroy*, 256 A.2d 763 (Del.Ch. 1969); *Higginbotham v. Higginbotham*, 92 N.J.Super. 18, 222 A.2d 120 (App.Div.1966); *Miller v. Miller, Supra;* Restatement (Second) of Conflict of Laws § 102 (1971); 50 C.J.S. *Judgments* § 889 h. (1947). Specifically, full faith and credit has been extended to foreign equity decrees which order an in personam conveyance of land located in another state. *Varone v. Varone*, 359 F.2d 769 (7th Cir.1966); *Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11 (1957); *Ivey v. Ivey*, 183 Conn. 490, 439 A.2d 425 (1981); *Weesner v. Weesner*, 168 Neb. 346, 95 N.W.2d 682 (1959); *Higginbotham v. Higginbotham, supra;* Restatement (Second) of Conflicts of Laws § 102

comment d (1971). Such decrees have also been recognized and enforced under principles of comity. *Allis v. Allis,* 378 F.2d 721 (5th Cir.1967), *cert. denied,* 389 U.S. 953, 88 S.Ct. 337, 19 L.Ed.2d 363 (1967); *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961); *Lea v. Dudley,* 20 N.C. App. 702, 202 S.E.2d 799 (1974).

 Because we grant full faith and credit to the California decree, appellants may not attack the merits of the California decree by contending that the California court did not adequately trace the fraudulently obtained funds to the acquisition of any specific property. Appellant had the opportunity to appeal the California judgment, but did not pursue an appeal. The time has now passed to appeal the California judgment and appellant may not challenge the merits of that decree in this Court. *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); 47 Am. Jur.2d *Judgments* § 919 (1969).

### IV.

We turn now to discuss the manner in which the California order may be enforced in Idaho. "The local law of the forum determines the methods by which a judgment of another state is enforced." Restatement (Second) of Conflict of Laws § 99 (1971).

"A typical case is when a court of State X orders the defendant to convey to the plaintiff land situated in state Y, and a suit to enforce the X judgment is brought in Y. The X judgment will be enforced in this situation if the Y courts follow the majority rule. To be sure, the X court would have no jurisdiction to affect title to Y land directly by its decree. Hence a decree of the X court providing simply that title to the Y land should henceforth be in the plaintiff would be void and not entitled to recognition. But in the case put the X court has done no more than order the defendant who was subject to its jurisdiction to do a particular act. This the court had power to do. Its order that the defendant should convey Y land is therefore valid.

". . . .

"The Y court has alternative methods of enforcing the X decree when the defendant is subject to its jurisdiction. The court may *order the defendant to convey the Y land* in compliance with the X decree and punish him for contempt if he fails to do so. Or, since the land itself is subject to its jurisdiction, the Y court may itself *transfer title to the land* to the plaintiff. If, however, the defendant is not subject to the jurisdiction of the Y court, the only way that the Y court may enforce the X decree will presumably be to transfer title itself to the Y land to the plaintiff."

Restatement (Second) of Conflict of Laws § 102 comment d (1971).

The Idaho court ordered the Morrows to convey the property to Andre'. However, when the Morrows failed to comply with this order, the court transferred title to the Idaho property to André. This transfer was well within the power of the Idaho court since the Idaho property was subject to the court's jurisdiction.

 The Idaho court held the constructive trust was impressed upon the Idaho property as of the time the appellants acquired it. We agree. A constructive trust takes effect at the time of the wrongful act, and traces funds gained by the act until the rightful recovery is made. *Packer v. Donaldson,* 16 Ariz.App. 294, 492 P.2d 1232 (1972); *Markel v. Transamerica Title Insurance Co.,* 103 Ariz. 353, 442 P.2d 97 (1968); 89 C.J.S. *Trusts* § 146 (1955); 76 Am.Jur.2d *Trusts* § 251 (1975). Thus, the Idaho property was never the appellants' property such that a homestead declaration could be claimed thereon.

We hereby affirm the order of the district court transferring title to the Idaho real property to respondent.

After reviewing the entire proceedings of this case, we are left with the firm conviction that appellants' claims were unreasonable, without merit and frivolously pursued. I.C. § 12–121; I.A.R. 41; I.R.C.P. 54(e)(1); *Rueth v. State,* 103 Idaho 74, 644

P.2d 1333 (1982); *Bonanza Motors, Inc. v. Webb,* 104 Idaho ·234, 657 P.2d 1102 (Ct. App.1983); *W.F. Const. Co., Inc. v. Kalik,* 103 Idaho 713, 652 P.2d 661 (Ct.App.1982).

Judgment affirmed.

Costs and attorney fees on appeal to respondent.

HUNTLEY, J., and McFADDEN and SCOGGIN JJ., pro tems., concur.

BISTLINE, Justice, concurring in part and dissenting.

There are statements in the majority opinion with which I am in accord. As pointed out therein, the appeal is from the grant of a summary judgment in favor of the Conservator and against the Morrows. This judgment was entered in the Idaho County case and not in the Nez Perce County case. The Conservator's brief insists that by amending their Idaho County complaint to allege the California judgment, they were suing on the California judgment—citing I.C. § 10–1306. Respondent's Brief, p. 13. The record bears out that contention, and mention of the filing of the California judgment in Nez Perce County in the majority opinion is irrelevant. The real property involved is in Idaho County, not Nez Perce County. On June 13, 1979, the Conservator had filed an action in Idaho County District Court asking that court to impose a trust against the Idaho real property. That complaint was amended, the filing date being December 12, 1979. With all of that I agree, and I agree with the majority's holding that a district court in Idaho "may not grant *res judicata* effect to the Bankruptcy Court's order, because such an order would prevent any opportunity in the Idaho courts to contest whether the California court indeed had valid jurisdiction." Had the majority stopped short at that point and simply reversed and remanded for a trial on the very issue which it declares is subject to contest, I could have concurred and thereby avoided expending a considerable effort of resources. But the majority, having found error on the part of the district court in preventing an opportunity to contest the jurisdiction of the California court, then proceeds to embark upon its own disposition of the motion for summary judgment, the net result of which is likewise to "prevent any opportunity in the Idaho courts to contest whether the California court indeed had valid jurisdiction." The majority somehow perceives that there exists here a rationale by which it can be said, as this Court for over a decade now has said, that "the district court was right but for the wrong reasons"—leaving it to this Court to disclose the right theory, which is here said to be simply "on principles of full faith and credit." In holding the district court in error, the majority relies upon passages from *Wright v. Atwood,* 33 Idaho 455, 195 P. 625 (1921), and *Prather v. Loyd,* 86 Idaho 45, 382 P.2d 910 (1963). Both of these cases affirm long-standing Idaho case law holding that *collateral attack,* rather than direct attack, may be utilized to defeat a void judgment. *Wright v. Atwood,* as the majority opinion notes, was relied upon and quoted from in *Spaulding v. Childrens' Home Finding and Aid Society of North Idaho,* 89 Idaho 10, 402 P.2d 52 (1965). Having made a correct reading of the three cases mentioned, the majority properly states that *"the issue of whether a court has exceeded its jurisdiction is always open to collateral attack in Idaho."* (Emphasis added.) Wholly ignoring or choosing to ignore that "Reexamination of jurisdiction on collateral attack is in effect a new trial," and that "Extrinsic evidence is admissible in such a proceeding," *Leff v. Leff,* 25 Cal.App.3d 630, 102 Cal. Rptr. 195 (1972), the majority now engages this Court in passing *de novo* on motions for summary judgment. On the basis that the California court had jurisdiction of the Morrows because they were afforded "the opportunity to participate in the California action and did so," the majority, while finding fault on the part of the district court, precludes the Morrows from a trial contesting the validity of the trust provisions of the California judgment. At the same time no effort is made to display an opinion which squares with our recent case of

*Schwilling v. Horne*, 105 Idaho 294, 669 P.2d 183 (1983)—thus perhaps leaving the law in Idaho in a state of uncertainty.

## I.

The majority opinion, at the end of Part III, makes this statement:

> "While it is well settled that a judgment of the courts of one state cannot directly affect title to realty located in another state, a personal judgment ordering a conveyance of the property by a party is a valid exercise of a court's power ...."

In footnote 2 to the foregoing passage, which footnote was added subsequent to and responsive to an opinion which I earlier circulated, the majority opinion makes this statement:

> "[W]e confirm the California court's determination of the property rights in the Idaho property between these parties, *incident to the California court's imposition of a constructive trust on that property.*" (Emphasis added.)[1]

The majority opinion, as it begins its Part A(1) of Part I provides us with the rationale of its conclusion that the California court's final judgment is entitled to full faith and credit in Idaho—which conclusion is wholly conclusory and unsupported:

> "The record disclosed that the California court had subject matter jurisdiction over the original fraud action commenced in California by respondent. The California court also had in personam jurisdiction over the litigants to the fraud action. We therefore hold that the California court did not exceed its jurisdiction nor violate any jurisdictional principles in directing appellants to convey the Idaho property to respondent by the force of an in personam order."

The Morrows have raised no claim that the California court did not have an in personam jurisdiction, or that it could not render a valid monetary judgment. The challenge which they have raised is the lack of jurisdiction in the California court to determine the real ownership of the Idaho real property, and to impose a trust on it, the effect of which divests the Morrows of ownership—which the majority concedes the California court has done, the majority making no independent determination and merely adopting and enforcing the California judgment. The majority, however, disposes of, without answering, that challenge with the terse passage which is set out immediately above, and which does not discuss jurisdiction in the power sense—which, after all, is the question before us.

Without going beyond that statement, it would appear that the major premise of the majority opinion is patently unsound. The judgment of the California court that the defendants deliver the Idaho property to plaintiff is not a freestanding fiat, but rather flows directly from the concomitant relief first afforded, i.e., *that the defendants do hold the Kamiah, Idaho, property in trust for plaintiff.*[2] Ergo, absent establishing a trust against Idaho real property, i.e., without deciding that the Morrows are trustees, there could be no order directing its "delivery" over to plaintiff. That should be the end of any needful analysis. The underlying facts are not complex. The California court also entered a monetary judgment against defendants for $104,000. Could the California court purport to at the same time impress a lien against Idaho real property as security for the judgment debt? Essentially, such is what happened in California in declaring the Idaho real property subjected to a constructive trust. The majority today believes that the California court could do so, and that this Court should enforce such a decree.

Even a cursory examination of the appeal record makes the majority opinion even less tenable. The findings of fact and conclusions of law of the California court are of foremost importance. Conceded that those findings and conclusions do furnish a basis for the monetary judgment

---

1. This is precisely what I had previously pointed out to the majority, and which appears *infra* exactly as earlier stated.

2. *See* footnote 1, *supra*.

entered by that court, they do not furnish a jurisdictional basis for the California court's judgment insofar as it imposes a trust on the Idaho property.[3] Nor are there any findings which even purport to do so.

In A(3) of Part I of the majority opinion, the majority, again subsequent to and responsive to that which I wrote earlier, makes little of what is spoken of as the dissent's observation "that the California court's findings and conclusions do not furnish a basis for the entry of a constructive trust on Idaho property. The dissent asserts that there was no finding which traced the proceeds of the fraud to the acquisition of the Idaho realty." Brief comment is in order. It is not just that "the dissent asserts"—but rather that there simply are no such findings. The majority is also willing to assume *arguendo* "that the California court neglected to make such a finding"—from which the majority is seen all too clearly as allowing itself the luxury of indulging in the unwarranted inference that the California court had indeed made such a finding, but merely neglected to enter it. Most members of the bench and bar have heretofore labored under the belief that, in summary judgment proceedings, inferences are not drawn in favor of, but against, the moving party.

The majority avoids this thorny issue with this bare-bones statement:

"It is the view of the majority that inherent in the California judgment was a determination that the proceeds from the fraud were used to acquire the Idaho property."

This is indeed novel for three reasons. The majority is again applying the rule of inferences in favor of the party making the motion for summary judgment. The statement is unsupported by any precedent. Although the record is replete with jury findings and court findings on issues of fraud and deceit, there is not a single finding going to that which is necessary to establish a constructive trust, and hence the

"inherent" inference or presumption is without legal foundation.

In addition to the "inherent" theory advanced in the majority opinion, it is also said therein immediately prior to Part IV that "Because we grant full faith and credit to the California decree, appellants may not attack the merits of the California decree by contending that the California court did not adequately trace the fraudulently obtained funds to the acquisition of any specific property." However, the majority errs in choosing to see this as an attack on the merits. It is not. Even in the California appellate system it would not be thusly viewed. While it could be a challenge in an appeal on the merits, it is one of those not too unusual situations where a given proposition goes to the issue of jurisdiction as well as to the merits. Again we are required to look at *Wright v. Atwood, supra*, to which the majority opinion itself resorts:

"A judgment by a tribunal ... which exceeds or lies beyond its authority is necessarily void, and may be shown to be so in collateral proceedings...."

A preceding paragraph from *Wright v. Atwood*, conveniently omitted in the majority opinion, but which this opinion supplies, enhances the foregoing paragraph and makes it clear that under existing Idaho case law, judgments may be held void because the court either purported to decide some question which it *had no power* to decide, or granted some relief under which no circumstances it had no power to grant. 33 Idaho at 461, 195 P. 625. Although the Morrows could have directly attacked the California decree in an appellate court in that state, showing "sufficient cause to have it annulled, reversed, vacated or declared void," 33 Idaho at 461, 195 P. 625— which is certainly the law in Idaho and California—a collateral attack is also available, as set forth in the majority's above-quoted paragraph from *Wright v. Atwood*. That which is void for lack of jurisdiction in the power sense is just as void as where there is a failure of in personam jurisdic-

---

**3.** The findings and conclusions of the California court are appended hereto.

tion or subject matter jurisdiction. Such was the precise issue in that case, just as it is in this case. Even were it to be conceded, *arguendo*, that a California court could concern itself with a claim that Idaho real property should be subjected to a constructive trust, as a condition precedent to the court's power to award such relief, there would necessarily have to first be found that monies which were obtained by misrepresentation were in fact used to acquire specific Idaho real property. The California court would have to have the power to try the issue, the power to impose a trust on Idaho realty, and must be able to show findings that established the tracing. Evidence should support such findings.

Where the court had no such authority, an aggrieved party is not relegated to direct attack by appeal, but may collaterally assail such a judgment whenever it is sought to be invoked against him. Such indeed is the situation here. Where the Conservator asks an Idaho court to extend full faith and credit to a California decree, the only issue which will ordinarily be tried is that of jurisdiction.

And, as discussed elsewhere, although in personam jurisdiction is not an issue, and although subject matter jurisdiction to the extent of a transitory damage action for fraud and deceit is not a question, there remains the serious question of subject matter jurisdiction to try in a California court the claim that Idaho property is subject to a constructive trust—carrying with that issue the concomitant issue of power jurisdiction. This Court a few years after *Wright v. Atwood, supra,* observed that "because jurisdiction over the subject matter can never be waived and cannot be acquired by consent, there are numerous authorities which hold that want of jurisdiction over the subject matter may be shown by evidence *dehors* the record." *Williams v. Sherman,* 36 Idaho 494, 212 P. 971 (1922). In *Smith v. Canyon County School District No. 34,* 39 Idaho 222, 226 P. 1070 (1924), there is this further illuminating passage:

"The learned trial judge concluded that the objections made to the organization of the district and the levy could be raised only by an appeal from the orders of the board of commissioners. In support of this contention reliance is placed on *School District No. 25 v. Rice,* 11 Ida. 99, 81 Pac. 155, which intimates, if it does not directly hold, that, even when an order of the board is void for want of jurisdiction, the only remedy is by appeal. This, however, is not in accordance with the later decisions of this court in *State v. Catlin* [33 Idaho 437, 195 P. 628] and *Chapman v. Northern Pacific Ry. Co.* [29 Idaho 294, 158 P. 560], supra, which affirm the generally recognized principle that *jurisdictional questions, as distinguished from mere irregularities, need not necessarily be raised on appeal, but may be raised by any form of direct, or even collateral, attack.*" (Emphasis added.)

The majority does correctly recognize that a judgment of the courts of one state cannot directly title to realty located in another state, but that an in personam judgment ordering a conveyance of the property is a valid exercise of the court's power. But the problem then encountered is the requirement that the California court in fact had jurisdiction, in the power sense, to try the trust issue and enter the order which it entered. *Wright v. Atwood, supra,* long ago made it clear that:

"A collateral attack is an attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree or enjoining its execution. (*Morrill v. Morrill,* 20 Or. 96, 23 Am.St. 95 and note, 25 Pac. 362, 11 L.R.A. 155; Van Fleet's Collateral Attack, sec. 3.)

"Judgments may be entered in cases where the court has undoubted jurisdiction over the subject matter, and of the parties, *yet nevertheless may be void because the court decided some question which it had no power to decide, or granted some relief which it had no power to grant. If a court grants relief which under no circumstances it has any authority to grant, its judgment is*

*to that extent void, although it may have had jurisdiction over the subject matter and the parties.* (Freeman on Judgments, 4th ed., sec. 120c, p. 196; *Gile v. Wood,* 32 Ida. 752, 188 Pac. 36;

. . . .

. . . .

"... [A] judgment by a tribunal without authority, or which exceeds or lies beyond its authority, is necessarily void, and may be shown to be so in collateral proceedings, even though it be a court of general jurisdiction, because no authority derived from the law can transcend the source from whence it came; ...." [4]

33 Idaho at 461–62, 195 P. at 631–32 (emphasis added).

Keeping this principle in mind, it is seen that the California court could not establish a trust on Idaho property—such was relief beyond its power to grant. Hence, the decree insofar as it purports to do so is absolutely *void.* This the California court obviously recognized as witnessed by the highly significant fact that it did not bother with the description of the Idaho property upon which it is now said to have imposed a trust. The majority opinion inaccurately says of the California judgment that it "ordered the appellants (Morrows) to convey to respondent the property so held in trust." The California court, obviously well-versed in California law, did not use that language. The California judgment, after awarding general and exemplary damages, in paragraph two used this language:

"2. That the Defendants hold the following property in trust for Plaintiffs: $30,000.00 in cash, five (5) acres of real property in or near Kamiah, Idaho, including improvements thereon and building materials located upon said real property or purchased to be used in the home under construction thereon, furniture and personal effects from the St. Joseph, Missouri home of Beatrice Morrow, a two-fifths (⅖) interest in that certain Note secured by a Deed of Trust from Ed Austin to property in or near Brentwood, California."

On close observation it is seen that the California court was imposing a trust upon *personalty* which was in California; this would be within the power of that court. But in doing so, as an apparent afterthought, and as experienced trial lawyers have seen happen, "for what it was worth" the court threw into the trust pot the Idaho real property—but not describing it. Anyone should concede the extreme unlikelihood that an experienced and learned California trial judge would categorize Idaho real property with (a) $30,000 cash; (b) furniture and personal effects; and (c) a two-fifths interest in a promissory note (secured by a trust deed on California property).

Then, in the third paragraph of the California judgment is the affirmative relief afforded:

"3. That Defendants and each of them, deliver forthwith all of said property held in constructive trust to Plaintiff."

It surely cannot be seriously contended that a superior court judge, if he did think that he could validly impose a trust on Idaho property, would fail to describe it. Nor should it be ignored that personal property in California is capable of *delivery,* as the California court ordered, but real property is not. Hence, as I point out above, the California court did not order the Morrows to "convey" the Idaho property—vaguely described as "five (5) acres of real property in or near Kamiah, Idaho." That the learned trial judge in California is perceived of by a majority of this Court as having attempted to create a trust upon real property, any real property anywhere, even situate in California but especially found in Idaho, without describing it, is a most mind-boggling proposition. Obviously that trial judge knew that he could not

---

**4.** Interestingly, the majority opinion, in reaching the conclusion above discussed, i.e., that the district court erred in granting *res judicata* effect to the validity of the California decree, relied entirely upon this paragraph, without mentioning the preceding paragraph which makes it clear that the court's concern was jurisdiction in the power sense, power to decide the question, and power to grant a particular relief.

impose a trust against Idaho property. Equally obviously, he did not do so when there was no legally sufficient description of the property, and resort to parol evidence, a great deal of parol, would later be required to identify the five acres in Idaho. Recently in *White v. Rehn*, 103 Idaho 1, 644 P.2d 323 (1982), this Court, displaying in its opinion that the prior precedent relied upon was an early California case, declared:

> "Although this court has never adopted a highly defined standard for determining the sufficiency of a description of land we have adopted a general standard which was set forth in *Allen v. Kitchen*, 16 Idaho 133, 142, 100 P. 1052, 1061 (1909), quoting *Craig v. Zelian, 137 Cal. 105, 69 P. 853 (1902)*.
>
> 'An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing, with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the particular parties negotiated, and supplying a description thereof which may have been omitted from the writing.'"

103 Idaho at 3, 644 P.2d at 325 (emphasis added).

It is impossible to believe that the California court seriously thought that it could determine the ownership of Idaho property, and then not bother with the requirement of describing it—which is to say nothing of the impropriety of an Idaho court later resorting to inadmissible parol evidence in order to ascertain the true identity of the five acres of Idaho real property.

## II.

The majority opinion gives recognition to the Morrows' contention "that the California court lacked jurisdiction or competence to render a judgment directly affecting title to real estate in Idaho." Having twice pointed to that issue, the majority wholly fails to dispose of it, but immediately distracts itself by a totally inapplicable statement dealing with the doctrine of *unjust enrichment*. The issue here, however, has been at all times the claim that the Idaho real property was purchased by the Morrows with monies which they *fraudulently* obtained from Beatrice Morrow. If it can be established that this is true, then an equity court with rei sitae jurisdiction will properly vest the title in the true owner— all of which is based upon equitable relief from fraud, and has nothing whatever to do with awarding relief from unjust enrichment. A cursory reading of *Rowe v. Burrup*, 95 Idaho 747, 518 P.2d 1386 (1974), will readily disclose that it bears no resemblance whatever to this case, and provides no guidance whatever to the issue before us. However, the case of *Davenport v. Burke*, 30 Idaho 599, 167 P. 481 (1917), cited in *Rowe v. Burrup, supra*, does have applicability:

> " 'Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title.... If one party obtains the legal title to property, not only *by fraud or by violation of confidence or of fiduciary relations*, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owners.' "

30 Idaho at 608, 167 P. at 490 (quoting from *Clough v. Dawson,* 69 Or. 52, 138 P. 233).[5]

It will be at once noted that the *Davenport* case correctly speaks in terms of "one holding the legal title," here the Morrows, who had allegedly obtained it "by fraud or by violation of confidence or of fiduciary relations." The purpose of such an action is simply to ascertain who will be the owner, whether it be the holder of the legal title, or the plaintiff claiming that monies wrongfully taken from him have been used to purchase certain specific property. A problem with the majority opinion is the failure to distinguish between an express trust and a constructive trust, the latter not being a trust, but rather an equitable remedy. As pointed out by one jurist, "It is not without significance that in the A.L.I. Restatement, the subject of Constructive Trusts is treated in the Restatement of Restitution rather than in the Restatement of the Law of Trusts." *Papazian v. American Steel & Wire Co. of New Jersey,* 155 F.Supp. 111, 118 (1957).[6]

A constructive trust is a remedy which a party seeks from an equity court. Where it is sought to be imposed upon a parcel of real property, it is an action *in rem.* Until it is imposed there is nothing—and certainly no trust arrangement as we know the word trust in the Law of Trusts. In language similar to that used by this Court in *Davenport v. Burke, supra,* the Fourth Circuit Court of Appeals in *International Refugee Organization v. Maryland Dry Dock Co.,* 179 F.2d 284, 287 (1950), said this:

"The fact that a court of equity will decree a constructive trust in property obtained by fraud or purchased with funds obtained by fraud does not mean that the title of the owner is defective or his possession tortious. A constructive trust is not a title to or lien upon property but a mere remedy to which equity resorts in granting relief against fraud; and *it does not exist so as to affect the property held by a wrongdoer until it is declared by a court of equity as a means of affording relief.* See Pomeroy's Equity Jurisprudence 4th ed. vol. 3, sec. 1044, pp. 2371–3; A.L.I. Restatement of Restitution sec. 160; 54 Am.Jur. pp. 169–70; *Rolfe v. Gregory,* 4 De Gex, J. & S. 576, 579; *In re Farmers State Bank of Amherst,* 67 S.D. 51, 289 N.W. 75, 126 A.L.R. 619; *Edwards v. Culbertson,* 111 N.C. 342, 16 S.E. 233, 234, 18 L.R.A. 204. As said in the case last cited: 'The trusts of which we are speaking, are not what is known as "technical trusts," and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the possession of the wrongdoer.' " (Emphasis added.)

Unfortunately, the majority opinion having derailed itself with the gratuitous statement explaining the difference between the duties of a constructive trustee and the trustee of an express trust, never deals in any way with the issue actually here presented, i.e., the claim that Beatrice Morrow's money was fraudulently taken from

---

**5.** There is an abundance of later cases where trusts have been imposed for fraud or violation of a confidential and fiduciary relationships. I use *Davenport* because it is the case which an earlier Court used in the *Rowe v. Burrup* opinion, and was, of course, founded upon the same grounds as the case now before us.

**6.** In that same case the court there made a statement, the contents and application of which were surely well-known to the learned California Superior Court in choosing the language of its decision and judgment:

"It is ordinary Hornbook law that one who has been induced by fraudulent representations to part with his property has a choice of

remedies. He may disaffirm the transaction and sue in equity to set aside the transfer, or he may affirm the transfer and institute a common law action for damages for fraud. He cannot in the same action do both." *Papazian, supra,* at 119 (1957).

"A general claim for money damages will not give rise to a constructive trust.

"A prerequisite to the imposition of a constructive trust is the identification of a specific property, or res, in which the claimant has an interest."
*Amtitle Trust Co. v. Fitch,* 25 Ariz.App. 182, 541 P.2d 1166, 1168 (1975).

her and was used to purchase five acres of land in Idaho. The majority opinion, continuing to concede that "it is well settled that a judgment of a court of one state cannot directly affect title to realty located in another state," and without giving any recognition to the basic theory of the claim against the Morrows, i.e., who will become the owner of the Idaho real property, allows as how that "a personal judgment ordering a conveyance of the property by a party is a valid exercise of a court's power." This, of course, leaves forever unanswered the issue argued by the Morrows, namely that the California court could not order a conveyance of the Idaho property without first (improperly) deciding the actual ownership of the property, which the majority acknowledges but somehow fails to comprehend, while at the same time continuing to agree that title to land in a foreign state cannot be determined except in that foreign state. A problem the majority encounters is simply the failure to distinguish that, as to a parcel of real property, there are two different issues. The more common of these has nothing to do with determining ownership; ownership is conceded. This common variety often appears in divorce cases. For instance, there will be no question but that the Browns *own* the land, whether it be situate in New York, Illinois, or Utah. In a divorce action, whether it be brought in Idaho, in Arizona, or in Kansas, the court will not have to decide who *owns* the various parcels, but rather who *gets* those parcels. Ownership is not tried, but to be determined is a division of the owned property. Without doubt the court having acquired jurisdiction of the parties is entitled to award real property which is situate in another state, and equally without doubt it may enforce its determination via in personam orders requiring conveyances under penalty of contempt. Equally without doubt, *a court in doing so is not trying title to real property* nor affecting title to real property, but simply by determining who gets what, and ordering conveyances which it

can enforce by contempt processes where the parties are available to such process. In other cases, however, ownership is not conceded, and ownership or some claim against real property is the subject matter of the litigation.[7]

Now, a nicely related question might be, as an example, before it is decided which of the divorcing parties will be awarded foreign state real property, what is the situation if third parties own or claim ownership of all or part of the real property which is beyond the divorce court's jurisdiction?

Such a case was *Porter v. Porter*, 84 Idaho 400, 373 P.2d 327 (1962), and *Porter v. Porter*, 101 Ariz. 131, 416 P.2d 564 (1966). In the Idaho divorce action between the Porters, where both appeared, an issue tried was the ownership of the Arizona Hotel in Phoenix, Arizona. Two of Arnold Porter's sisters intervened in the divorce action, claiming part ownership of the hotel. The Idaho district court found that the sisters, Pearline and Pauline, were part owners, and proceeded to do two things, which are both remarkable and pertinent. It declared that the marital couple, Arnold Porter and Gladys Porter, held legal title, were trustees, and that they were required to transfer by deed to Pearline and Pauline a one-sixth interest each in and to the hotel. 84 Idaho at 407, 373 P.2d 327.

This determination was challenged in the Arizona courts, the situs of the Arizona Hotel. In that court's opinion is found a detailed history of the litigation, which is commended as interesting and helpful in understanding the ultimate result.

The Arizona court noted that the nature of Pearline and Pauline's intervention action in the Idaho divorce action was "in the nature of a suit to quiet title to the Arizona Hotel and the court undertook to directly adjudicate title thereto." Asking itself if the foregoing statement was justified, the Arizona Supreme Court answered with the same response this Court should this day be giving:

7. In an addendum I discuss three California cases brought to my attention by the majority

since my first writing.

"That conclusion becomes apparent when we ask the following question: would the Idaho court have ordered Gladys to execute the quitclaim deed if it had not *first* decided that the hotel was owned by a partnership or that it was community property? Obviously not. It determined in the divorce decree who had title to the property and *thereafter* ordered the parties to execute all conveyances necessary to carry out its judgment and decree."

416 P.2d at 571 (emphasis original).

Even before coming across the *Porter* cases in my research, this above statement was the same view to which I was drawn by a reading of *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186, and *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65. There simply is no getting around the basic premise that the California court, *assuming* that it ordered a conveyance (which it did not do) of a necessity had to first determine the ownership of Idaho property. As the Arizona court in its *Porter* opinion noted, and, yea, even as the majority today concedes to be the law before proceeding to ignore its own language:

"There is further reason why the Idaho judgment is not entitled to full faith and credit. *Idaho had no power or authority and was completely without jurisdiction to establish or quiet or otherwise directly affect title to the Arizona Hotel property. Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186; *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65."

416 P.2d at 570 (emphasis added).

*Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wash.2d 519, 445 P.2d 334 (1968), a case relied upon by the majority, and an exemplification of the other cases mentioned at the same point in the majority's opinion, clearly acknowledges the general rule and cuts in favor of the Morrows. The Washington court saw its obligation as first hinging on acknowledging the distinction between transitory actions and local actions. The action there was a "transito-ry action for breach of contract," 445 P.2d at 337, and "patently a contract action." 445 P.2d at 336. "The view is generally maintained that where the relief sought acts upon the party personally and does not require the court to deal directly with 'the estate itself,' the proceeding need not be maintained in the state or county where the property is situate. [Citations omitted.]" 445 P.2d at 338. The findings and conclusions of the California court, appended hereto, make it abundantly evident that that court found that the Morrows wrongfully obtained all of the assets of Beatrice Morrow for a promise by defendant Kenneth Morrow "that he would maintain her in his home for the rest of his [sic, her] life," not intending to perform that promise and intending to defraud her, together with her being unaware of his deceit, and her justifiable reliance on his promise. Findings of Fact 11–16. It is immediately recognized that the action was transitory, a classic case of a damage action for fraud and deceit. 37 Am.Jur.2d Fraud & Deceit pp. 1–679 and Supp. pp. 13–87; 37 C.J.S. Fraud pp. 204–504 and Supp. pp. 44–158; *Weitzel v. Jukich*, 73 Idaho 301, 251 P.2d 542 (1953); and *Nelson v. Armstrong*, 99 Idaho 422, 582 P.2d 1100 (1978). The relief awarded in fraud and deceit actions is damages, which is exactly the relief granted by the California court—$74,000 compensatory damages, and $30,000 punitive damages, which is all well and good, and never challenged by the defendants. But that is not our concern. Rather, even were there a law which allows a California court to impose a constructive trust on Idaho real property, somewhere in those findings there must be a finding that assets of Beatrice Morrow, or proceeds thereof, were used to acquire the Idaho realty. There is no such finding.

There being no such finding, there was fatally no jurisdiction, in the power sense, for the conclusion of law:

"That a constructive trust should be imposed upon ... the five acres of real property in or near Kamiah, Idaho, in-

cluding the improvements thereon, and building materials located upon or purchased to be used in home under construction thereon...."

R., p. 89.

or for an order compelling the Morrows to "deliver" the undescribed Kamiah property. As the Morrows point out in their appellants' brief, the bankruptcy court, the Honorable M.S. Young, readily recognized that the California judgment insofar as it was a monetary judgment for $104,000 was entitled to full faith and credit, having become final without any subsequent appeal or modification. The issue which he did not decide, in favor of instead allowing Beatrice Morrow's conservator the opportunity to establish the California judgment in Idaho, was whether the California decree subjected the Idaho property to a trust in favor of the conservator. Judge Young succinctly and to the point stated in his order:

"2. The effect of the judgment on Idaho land is best determined by the courts of the State of Idaho. It is a long standing rule that the determination of the effect of an in personam judgment in one state involving land in another state is to be determined by the courts of the state where the land is situated."

Quite clearly Judge Young did not put the cart before the horse, as does the majority opinion. Which is to say that Judge Young recognized that the basic issue for determination was the validity of a California court impressing a trust upon Idaho property—and not the validity of a freestanding order that the Morrows "deliver" the thus entrusted property.

What I see here is a clear frustration of Judge Young's order. Simply stated, the majority opinion does not answer the question propounded: What is the effect on Idaho real property of a California decree imposing a trust against it?

### III.

The majority plainly errs in failing to recognize that the issue of jurisdiction in the California district court to impose a trust has not been litigated, and thus in rendering today's opinion is squarely opposed to our recent holding in *Schwilling v. Horne*, 105 Idaho 294, 669 P.2d 183 (1983). In that case we reversed in order that the Idaho district court determine whether the Alaska district court had acquired an in personam jurisdiction over the defendant—which we held to be a prerequisite to the validity of the Alaska final judgment being relied upon in Idaho. In doing so we advanced three principles which are applicable here. First, we declared that:

"A valid final judgment entered in a state having jurisdiction over the parties and subject matter is entitled to full faith and credit in the courts of another state to the same extent it has by law in the courts of the state where the judgment was rendered. [Citations omitted.] ... *Sierra Life Ins. Co. v. Granata*, 99 Idaho 624, 586 P.2d 1068 (1978) (*judgment entered by court without jurisdiction over subject mater is void*."

105 Idaho at 296–97, 669 P.2d at 185–86 (emphasis added).

Secondly, we added that a "judgment entered by a court without jurisdiction over subject matter is void." 105 Idaho at 297, 669 P.2d at 186. *See generally* 47 Am. Jur.2d Judgments § 1236 (1969). Thirdly, we wrote that:

"When a court is called upon to enforce a foreign judgment, 'it may inquire into the jurisdictional basis of the foreign court's decree' to determine whether full faith and credit must be accorded. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Assoc.*, 455 U.S. 691, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982)."

*Schwilling*, 105 Idaho at 297, 669 P.2d at 186.

In that case we noted that the appellant had not appeared in the Alaska action naming him as a defendant, and hence "the jurisdictional question has not been previ-

474

ously litigated, and the district court in Idaho properly proceeded to determine the jurisdictional basis for the judgment entered by the Alaska court (citing the *Underwriters* case, and *Durfee v. Duke, supra* )." 105 Idaho at 297, 669 P.2d at 186. In the same paragraph we went on to note our understanding of *Durfee* to be that "although court may inquire into jurisdiction, where question of jurisdiction has been fully and fairly litigated and finally decided, judgment is entitled to full faith and credit." 105 Idaho at 297, 669 P.2d at 186.

In this case, unlike *Schwilling* where the jurisdictional issue was not subject matter jurisdiction, the Morrows do not contend any lack of an in personam jurisdiction. The California *transitory* action was tried, and a monetary judgment entered against them—all of which is not under any challenge. Rather obviously the Morrows, upon being served in California with the process of a California court, were not in any position to remain aloof, as happened in *Schwilling.* However, their appearance in the California court would not cloak the California court with subject matter jurisdiction any more than did the Idaho court have subject matter jurisdiction of the Arizona Hotel in the *Porter* cases. Moreover, there is absolutely nothing in the record which intimates in the slightest that the Idaho district court's inquiry to challenged subject matter jurisdiction (*see* R., p. 51) disclosed that that issue of jurisdiction had "been fully and fairly and finally decided in the court which rendered the original judgment." *Schwilling,* 105 Idaho at 297, 669 P.2d at 186; *Durfee v. Duke,* 375 U.S. at 111, 84 S.Ct. at 245; *Underwriters,* 455 U.S. at 706, 102 S.Ct. at 1366. Quite the contrary is the case. Everything in the California proceedings points to the fact that there was no litigation or adjudication of the subject matter jurisdiction of a California court to try title to Idaho real property and impose upon it a trust. Moreover, it cannot even be said that the Morrows voluntarily appeared in the action. Faced

with a transitory damage action for fraud and deceit, they had no choice but to default, or, as it turned out, defend and lose. Nothing, however, nothing whatever, sustains a conclusion that they submitted to trying the trust issue with the required tracing of funds, or that it was tried, or that there was a full and fair trial of the issue of subject matter jurisdiction and a finding or conclusion entered in that regard. Hence, subject matter jurisdiction of the California court to impose a trust being challenged, and it not being shown to have been litigated, that issue should have been resolved by the Idaho district court. *Schwilling, supra; Underwriters, supra.* The majority errs in attempting to resolve that issue at this level.

## IV.

As set out above in Part III, this Court has held that:

"A valid final judgment entered in a state having jurisdiction over the parties *and subject matter* is entitled to full faith and credit in the courts of another state to the same extent it has by law *in the courts of the state* where the judgment was rendered."

*Schwilling,* 105 Idaho at 296, 669 P.2d at 185 (emphasis added).

In addition to in personam jurisdiction and subject matter jurisdiction there is also jurisdiction in the *power* sense. *Power* jurisdiction is generally intertwined closely with subject matter jurisdiction, especially in those cases where the subject matter is real property. As the Supreme Court of Arizona properly observed in the Arizona *Porter* case, *supra:*

"Secondly, the Idaho judgment is not entitled to full faith and credit because the Idaho court had no jurisdiction, power or authority in the divorce proceeding to enter an order distributing property which was Gladys' separate property and not community property. At the sheriff's sale, Gladys acquired all of Arnold's

interest in the Arizona Hotel and it follows that the hotel was not community property thereafter. Idaho is a community property state and the court 'divides' the community property only when it grants a divorce. Idaho Code § 32–712. The Supreme Court of Idaho has said that:

 ' * * * The court has the power under said section (32–712) to divide the *community property* between the parties, but has *no power or authority to award the wife's separate property, or any part of it, to the husband.'* *Heslip v. Heslip,* 74 Idaho 368, 262 P.2d 999, 1002. (Emphasis supplied.)

It is axiomatic that full faith and credit need not be given to the judgment of the Idaho court because it acted without jurisdiction. *Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561."

*Porter,* 416 P.2d at 568–69 (underscoring added, italics original).

In *Schwilling,* as I have emphasized above, we observed that in deciding whether or not a foreign state court, there Alaska and here California, had the requisite jurisdiction to render a valid judgment, we will look to the law of the state where the judgment was rendered, which today's majority opinion completely fails to do. Were the majority to do so, it would at once fully understand why the California Superior Court (in some places above referred to as the district court) did not describe the Idaho property purportedly being impressed with a trust, the effect of which was, other than the fatal defect of failing to provide a legal description, a judicial decree that the actual ownership was not in the Morrows.

It is readily ascertained that California law is generally the same as Arizona law—discussed above in connection with the *Porter* cases. Generally, I say, because California jurisprudence is even more protective of real property subject matter jurisdiction, and does not countenance title to California real property being determined elsewhere. Nor do the courts of California have jurisdiction to determine title to real property not situate in California:

 "For at least two *obvious reasons* the disputed title to this Kansas real property may not appropriately be litigated in this probate proceeding. In the first place, it is the general rule that the probate court will not try title to property where it is claimed adversely by a party other than the personal representative....

 "In the second place, *it is elementary* that title to real property ordinarily may be determined only by the courts of the State in which it is situated. *Taylor v. Taylor,* 192 Cal. 71, 76, 218 P. 756, 51 A.L.R. 1074; *Getty v. Getty,* 130 Cal. App. 519, 520, 20 P.2d 82; *Launer v. Griffen,* 60 Cal.App.2d 659, 668, 141 P.2d 236."

*In re Hoefflin's Estate,* 1 Cal.Rptr. 642, 650, 176 Cal.App.2d 619, 631 (1959) (emphasis added).

*Taylor,* cited in the above quotation from *Hoefflin's Estate,* states that which forever has been the rule in California, from whence comes the judgment the validity of which is under our review:

 "That the courts of one state cannot make a decree which will operate to change or directly affect the title to real property beyond the territorial limits of its jurisdiction must be conceded. The doctrine that a court, not having jurisdiction of the res, cannot affect it by its decree is firmly established. [Citations omitted.] By means of its power over the person of the parties before it, a court of equity may in proper cases compel them to act in relation to property not within the jurisdiction, but its decrees do not operate directly upon the property nor affect the title. They are only made effectual through the coercion of the parties, by directing some action on their part, such as the execution of conveyances or the cancellation of instruments. *Fall v. Eastin,* supra. The reason for the rule is that jurisdiction to affect the

title to real estate by a judgment in rem, or directly against the thing itself, exists only in the courts of the state wherein the land is situated.

" 'No principle is more' fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and determine the status of lands and immovable property within its borders, including their title and its incidents and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees, and judgments of its courts, can in the least degree affect such lands and immovable property.' [Citations omitted.] *Tiedemann v. Tiedemann*, 172 App.Div. 819, 158 N.Y.Supp. 851, affirmed in 225 N.Y. 709, 122 N.E. 892.

. . . .

" . . . If jurisdiction does not exist, the enforcement of a judgment rendered in one state is not compelled by the due faith and credit clause of the Constitution. *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 291, 8 Sup.Ct. 1370 [1374–75], 32 L.Ed. 239; *Andrews v. Andrews*, 188 U.S. 14, 39, 23 Sup.Ct. 237 [243], 47 L.Ed. 366. Consequently, the appearance of the parties in the Nevada court, and the allegation and admission as to there being no community property, added nothing to the effect of the Nevada decree on property in this state. *Neither a party, nor both parties, can vest a court with a jurisdiction to which it is a stranger. King v. Kutner-Goldstein Co.*, 135 Cal. 65, 67, 67 Pac. 10."

*Taylor v. Taylor*, 192 Cal. 71, 218 P. 756, 758–59 (1923) (emphasis added).

The California appellate courts recognize the same rule which we acknowledged in *Schwilling:*

**8.** In *Sierra Life Insurance Co. v. Granata*, 99 Idaho 624, 586 P.2d 1068 (1978), we used almost identical language:

"Furthermore, because of the serious ramifications and consequences which could follow from a court acting without jurisdiction over the subject matter, we recognize that it is important to keep that concept clearly defined. For example, the defense of lack of

*"In the instant case, however, we are concerned with a collateral attack on a Nevada judgment by a California court. In such circumstances California has followed the well established rule of Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, and reexamined the jurisdictional facts to determine whether the foreign court in fact had jurisdiction.* Extrinsic evidence is admissible in such a proceeding. 'Such decree may be impeached collaterally by extrinsic evidence. This is true notwithstanding either the recitals of such decree or the false testimony given by the plaintiff in support of the judgment.' (*Roberts v. Roberts*, 81 Cal. App.2d 871, 879, 185 P.2d 381, 385 [disapproved on another point in *Spellens v. Spellens*, 41 Cal.2d 210, 219, 317 P.2d 613]; see also *Seabron v. Seabron*, 133 Cal.App.2d 374, 375, 284 P.2d 117; *Strauss v. Strauss*, 90 Cal.App.2d 757, 758, 203 P.2d 857.) *The trial court reexamining the jurisdiction of a sister state may scrutinize the circumstances occurring after rendition of that decree as well as the facts as they existed at the time of rendition of the decree.* The trial court here was not limited to a review of the evidence adduced in the Nevada proceeding as Wife suggests. *Reexamination of jurisdiction on collateral attack is in effect a trial de novo on that issue."*

*Leff v. Leff*, 102 Cal.Rptr. 195, 198, 25 Cal.App.3d 630, 636 (1972) (emphasis added).[8]

On the premise that the imposition of a lien against real property is akin to imposing a trust, another case from California informs us rather compellingly as to the state of law in that state:

jurisdiction over the subject matter is never waived (I.R.C.P. 12(h)); purported judgments entered by a court without jurisdiction over the subject matter are void and as such are subject to collateral attack, and are not entitled to recognition in other states under the full faith and credit clause of the United States Constitution (Restatement of Judgments, § 7 (1942))."

"We are entirely in accord with defendants' first contention that a court of one state cannot directly affect title to land in another. However it is equally true that a court having the parties before it can, in a proper case, through its coercive powers, compel them to act in relation to property not within the territorial jurisdiction of the court. *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65; *Taylor v. Taylor*, 192 Cal. 71, 218 P. 756, 51 A.L.R. 1074. *In the present case the purported imposition of the lien can in no way be considered other than as an attempt by a court of this state to affect title to land in Illinois. It necessarily follows that the trial court herein acted in excess of its jurisdiction and that the order, at least to that extent, is of no force or effect. Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11. And under the facts as shown by the record herein, the enunciated rule is equally applicable to the movables located in and held by the trust in Illinois. 1 Beale, Conflict of Laws, sec. 52.1, pp. 302–03; and sec. 99.1, p. 436."

*Hardy v. Hardy*, 164 Cal.App.2d 77, 330 P.2d 278, 280 (1958) (emphasis added).

## V.A.

In discussing subject matter jurisdiction, the Court's opinion, Part III, addresses Morrow's contention that the California court lacked jurisdiction to directly affect title to Idaho real property, saying:

"Appellants' reliance on Banbury is unfounded in view of the more recent decision of *Thompson v. Turner*, 98 Idaho 110, 558 P.2d 1071 (1977). In *Thompson*, we held that I.C. § 5–401–1 should not be read to limit subject matter jurisdiction to the court of the county where the real property is located in an action affecting possession of real property as previously held in Banbury."

*Thompson*'s concern was not subject matter jurisdiction but *venue*. As Justice Givens noted in *Banbury*, following rehearing:

"The pivotal question is whether the statutes of this state have so irremovably fixed the venue of actions involving real property in the county where the same is situated that by failure to follow the statutory procedure outlined to enforce a trial therein, the right so to do is waived."

*Banbury v. Brailsford*, 66 Idaho 262, 287, 158 P.2d 826 (1945).

Where Justice Givens parted with the Court in *Banbury* is set out in the first paragraph of his opinion where he observes the respondent's contention "that appellant, not having appealed from the order denying the change of place of trial ... may not now question the correctness thereof ...." *Id.* at 285, 158 P.2d at 849. He stated, and correctly so, that "failure [of the court] to transfer to the proper county could be waived." *Id.* at 290, 158 P.2d 826. Obviously, had the question been properly raised, and not waived, Justice Givens would have agreed with the other justices. *Banbury* is of no utility in this case, nor is *Thompson*. It has always been the law in Idaho, and still is, that district courts in Idaho have subject matter jurisdiction over any real property in Idaho —subject, of course, to statutory venue provisions, which can be waived. Jurisdiction and venue are often confused, and the Court's opinion today unfortunately will add to that confusion. Proper venue is given an exhaustive treatment by Justice Thomas in *Jarvis v. Hamilton*, 73 Idaho 131, 246 P.2d 216, 33 A.L.R.2d 910 (1952).

## B.

While it is true that the Morrows' brief did cite *Banbury, supra*, it was cited in connection with argument as to the *jurisdiction* of the California court, not to venue. The thrust of that argument was that *comity* between states does not fill in where *jurisdiction* is missing. For the main part, the Morrows' argument on jurisdiction was, at R., p. 24, quoting from *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909):

"But, however plausibly the contrary view may be sustained, we think that the doctrine that the court, not having jurisdiction of the *res,* cannot affect it by its decree, nor by a deed made by a master in accordance with the decree, is firmly established. The embarrassment which sometimes results from it has been obviated by legislation in many states. In some states the decree is made to operate *per se* as a source of title. This operation is given a decree in Nebraska. In other states, power is given to certain officers to carry the decree into effect. Such power is given in Washington to commissioners appointed by the court. It was in pursuance of this power that the deed in the suit at bar was executed. But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that, when the subject-matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. In such case, the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment, or sequestration. On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated. 3 Pom.Eq.Jur. §§ 1317, 1318, and notes.

"This doctrine is entirely consistent with the provision of the Constitution of the United States, which requires a judgment in any state to be given full faith and credit in the courts of every other state. This provision does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment rendered conclusive on the merits of the claim or subject-matter of the suit. 'It does not carry with it into another state the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit.' "

### C.

*Fall v. Eastin, supra,* very well may contain in the last paragraph of the foregoing quotation, the answer to the exact question propounded by the bankruptcy court, i.e., the effect of a California judgment purporting to impose a trust in Idaho property. That passage teaches that, while the California judgment may be given *res judicata* effect in Idaho, "It does not carry with it into [Idaho] the efficacy of a judgment upon property or persons .... To give it the force of a judgment in [Idaho] it must be made a judgment there ...." Assuming *arguendo* that the California court's decree was not void as in excess of its jurisdiction by trying the issue of ownership of Idaho real property, its decree did not impose a trust on Idaho property, but only in turn was the authority under which the California court could compel the execution of a conveyance. Then in turn, continuing the *arguendo* assumptions, by applying *Fall,* and making the California judgment a judgment in Idaho, a trust could be legally and judicially imposed on the Idaho property.

Judge Swanstrom, by order of February 12, 1982, declared pursuant to stipulation that the California judgment was recorded on August 14, 1979. R., p. 67. In that same order he raised two questions as to

"when did the Idaho County property become impressed with the lien of the constructive trust?" In his view the questions were (1) did the California judgment create the lien of the trust effective as of the date of the judgment, or (2) did it relate back to some earlier date when the Morrows acquired the Idaho property?

In an order granting summary judgment against the Morrows, Judge Maynard, citing no authority, and purportedly giving efficacy to the California judgment, made into an Idaho judgment, held that "a constructive trust arises at the time the property was acquired.... That being the case the constructive trust is impressed upon the real property at the time that the defendants acquired it."

This is patently unsound. No Idaho court ever purported to independently establish a trust on the Idaho real property. Only a California court did so. In turn an Idaho court was asked to give full faith and credit to the California judgment. The California judgment did not purport to make that trust retroactive prior to the date on which it was imposed—either June 20, 1979, or July 12, 1979. That California judgment, for whatever it was worth in California, had no efficacy in Idaho until it was made a judgment in Idaho. *Fall, supra.* Even an unrecorded Idaho judgment would not have any effect upon title to Idaho real property. I.C. § 10–1110. The Idaho district court clearly erred in purporting to modify the California judgment so as to make the lien of the impressed trust retroactive, no matter what view is taken of the California court's acting without jurisdiction.

## ADDENDUM

Because of time constraints and the Court's scheduling the release of opinions, there has been insufficient time to blend into the foregoing opinion, as first written, a discussion of three California cases which the majority—subsequent to and responsive to my opinion as first written—has added to the majority opinion today being released. Those cases are found in the majority opinion.

It will be at once noted that the three cases are all divorce cases involving the incidental issue of property disposition, and as is most commonplace, the *division* of property which includes real property in a foreign state. It may also be noted that I have previously declared my adherence to the view that a divorce court with jurisdiction of the parties can properly consider foreign state real property *owned by the parties* in determining a just and equitable award. No one disputes that the divorce court with jurisdiction of the properties may, as to foreign state property, direct the execution of conveyances, and may enforce such orders by the court's contempt processes. But, nothing I heretofore found in my research, and nothing added by the majority's opinion as revised, brings me to the conclusion that one state court can try or affect the title to land in another. I mention again the Idaho and Arizona *Porter* cases as illustrative of the distinction in trying title or affecting title as against awarding property. A similar set of cases is *Rozan v. Rozan*, 49 Cal.2d 322, 317 P.2d 11 (1937), a unanimous opinion of the California Supreme Court, and *Rozan v. Rozan*, 129 N.W.2d 694 (N.D.1964), a unanimous opinion of the North Dakota Supreme Court. The Rozans were divorced in California; jurisdiction of the parties was not an issue, but a problem addressed by the courts of both states concerned real property in North Dakota. The California court stated the general rule that "a court of one state cannot directly affect or determine the title to land in another," 317 P.2d at 15, but also that "the courts recognize the validity of a deed executed under the compulsion of a foreign decree," *id.* at 15, and also that "in the majority of states, such decrees are given effect as a res judicata declaration of the right of the parties." *Id.* at 15. On those premises the California court presumed to declare the extent of the validity of the California decree in North Dakota:

"In the light of the foregoing principles the judgment in the present case is res judicata and entitled to full faith and credit in North Dakota to the extent that it determines the rights and equities of the parties with respect to the land in question. An action on that judgment in North Dakota, however, is necessary to effect any change in the title to the land there. *Thus, the judgment must be affirmed to the extent that it declares the rights of the parties before the court and modified to the extent that it purports to affect the title to the land."*

317 P.2d at 16 (emphasis added).

The California court then proceeded to point to various provisions in the California judgment which it said *"purports to affect title to the land* and must be modified," and made the modifications. *Id.* at 16.

Turning to subsequent proceedings in North Dakota:

"The instant action is brought by plaintiff upon the California divorce decree to recover accrued sums under that judgment; to have this Court decree all North Dakota property acquired by Rozan and plaintiff, as described in the complaint, to be community property of plaintiff and Rozan; to establish title to such community properties in the ratio of 65% to plaintiff and 35% to Rozan, *as fixed by the California divorce decree,* and that plaintiff's proportionate interest be decreed to be held under implied trust for plaintiff's benefit; *to set aside certain alleged fraudulent conveyances;* and, plaintiff asks that title to the extent of 65% interest of all real properties so fraudulently conveyed as alleged be quieted in her.

. . . .

"In this respect, defendant Rozan does not question the jurisdiction of the California court to deal with dissolution of the marriage in question, he having appeared personally and defended the action in that court, and the judgment and decree of that court is to be accorded full faith and credit insofar as the California court, acting within its jurisdictional limitations, affected the marital status of the parties to the marriage. *Weldy v. Weldy,* 74 N.D. 165, 20 N.W.2d 583. It is settled in this State that a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property situate in North Dakota, and the California decree, being in personam and adjudicating the equities of the litigants to lands situate in North Dakota, did not have the direct in rem operational effect of transferring title to real property, the situs of which is beyond the territorial jurisdiction of the California court of divorce. A decree of judgment of a court of another jurisdiction having such a purported consequence will not be accorded full faith and credit under Article IV, Section I, of the Constitution of the United States. [Citations omitted.]

"However, authorities are in general agreement that the foreign court of adjudication, having the parties properly before it, may determine equities of those parties in real property situate in another state, and may order and compel conveyance of lands in another state and thus by an in personam decree indirectly affect such title, *and it is the executed conveyance and not the decree which is operative upon such title.* [Citations omitted.]

. . . .

"The California divorce decree found that the various conveyances of Rozan, Rollins and Rosen were fraudulent to plaintiff. The plaintiff, and the intervenor now urge that such finding of fact is res judicata of that issue and hence conclusive upon the parties to this action and decisive of that issue in this case.

"Such conclusive effect cannot be given the finding of fraudulent conveyance in the California decree, for as stated in the language of Higgins v. Higgins, supra, 'No provision was made in the divorce decree for conveyance by the hus-

band of his interest in the (* * * California) property to the defendant, and a situation where a litigant is seeking judgment in this jurisdiction for the enforcement of an equitable decree of a sister state is not presented.' In this instance, the foreign decree while finding that the conveyances in question were fraudulent, by its own language does not purport to be a final disposition of that issue and *the recognition of such finding as res judicata in this state would be an acknowledgment of jurisdiction in the courts of another state, by the sole operative effect of a judgment, to affect directly title of said North Dakota property.* Accordingly, the finding of fact by the California Court that the conveyances in issue were fraudulent, under the circumstances here presented, is not res judicata of that issue in this instance. *In re Reynolds' Will,* supra; Restatement of Conflict of Laws, Section 429, Comment (b), page 510; 24 Am.Jur., Fraudulent Conveyances Section 197, page 319; 37 C.J.S. Fraudulent Conveyances § 337, page 1171, *but rather the issue of fraudulent conveyance is to be resolved by the laws of this State and the evidence presented upon trial."*
*Rozan,* 129 N.W.2d at 699–703 (emphasis added).

One year after the California *Rozan* case, the California Supreme Court, in *Barber v. Barber,* 51 Cal.2d 244, 331 P.2d 628 (1958), addressed the question of "whether binding effect must likewise be given to the parties of the Oklahoma decree dealing with the [California] real property." 331 P.2d at 630. The California court mentioned its *Rozan* decision, and, according the Oklahoma decree the same denial of full faith and credit which the North Dako-

ta court meted out in its *Rozan* decision, said this:

"Although such a decree cannot in itself change or determine title, and while a subsequent action for that purpose must be brought in the situs state, an adjudication, for example, that one of the parties is entitled to the property is binding in the subsequent action. The rule of the Rozan case, however, cannot properly be applied to a judgment *which may be collaterally attacked in the rendering state on the ground that it is void for lack of jurisdiction."*
331 P.2d at 631 (emphasis added).
*Beeler v. Beeler,* 193 Cal.App.2d 548, 14 Cal.Rptr. 460 (1961), reaffirmed the general rule which I discussed at length in my opinion as first written, and is interesting only because Idaho real property was involved. The court there, in noting that the California courts could only act in personam on the parties before it, ordered a conveyance, whereas the original divorce decree purported to award to the plaintiff wife certain described real property in Greenleaf, Idaho.

It is only necessary to remember that today's majority and this dissent recognize the right of collateral attack in Idaho, and that there is the right to a trial *de novo* on a challenge to jurisdiction. The majority should not this day its own enter summary judgment, as is being done, but should reverse and remand to the district court for further proceedings.[9] *Schwilling v. Horne,* supra.

## APPENDIX

### "FINDINGS OF FACT

"1. Beatrice Morrow and Kenneth C. Morrow are sister and brother respectively,

---

9. A point not urged on the appeal, but which an appellate court cannot ignore, and which would be properly considered on reversal and remand, is the requirement of *Schwilling v. Horne, supra,* that the question of jurisdiction has been *fairly* litigated in the foreign court. Here, where there has not been any district court trial of that issue, which the district court precluded as the majority well notes, what record we do have of the California proceedings indicates all too strongly that plaintiff, Robert W. Andre, Conser-

vator, is one and the same person as Robert W. Andre, Clerk of the Superior Court, Tuolunne County, who, with Superior Court Judge T.R. Vilas, exemplified the California judgment entered in the very case which the judge tried and decided, and wherein he imposed a constructive trust on unspecified Idaho property and ordered its delivery to the plaintiff. I do not intimate what consideration should be given to this highly unusual circumstance, but it surely should not encourage the Idaho Supreme Court in en-

Kenneth C. Morrow being twenty-two (22) years younger than Beatrice Morrow.

"2. Beatrice Morrow became ill in October, 1976 and was hospitalized at Methodist Medical Center, St. Joseph, Missouri. During the time she was hospitalized her brother, Kenneth C. Morrow, came to visit her and on November 12, 1976 Kenneth C. Morrow and Billie Jo Morrow, his wife, moved Beatrice Morrow to Tuolumne County where she was hospitalized at Sierra Hospital. Beatrice Morrow was released from Sierra Hospital on or about November 22, 1976 and lived in the home of Defendants until May, 1977 at which time she was placed by them in Hillcrest Manor rest home.

"3. Between October, 1976 and May, 1977 there existed a confidential relationship between Beatrice Morrow and Kenneth C. Morrow in that Beatrice Morrow was in an especially intimate position with regard to Kenneth C. Morrow, dependent upon him, and reposed a high degree of trust and confidence in the said Kenneth C. Morrow; Kenneth C. Morrow was her closest living relative; there was disparity in age; there was also disparity in physical and mental condition in that Beatrice Morrow was aged and ill and totally dependent upon Kenneth C. Morrow and Billie Jo Morrow, his wife.

"4. Between October, 1976 and May, 1977 Defendants obtained a power of attorney enabling them to sell Beatrice Morrow's home in St. Joseph, Missouri; said house was sold by Defendants and Defendants received net proceeds of $27,611.30.

"5. Between October, 1976 and May, 1977 Defendants induced Beatrice Morrow to sign Deeds to her Apple Valley property which property was sold by Defendants and Defendants received the sum of $4,500.00 from said sale.

"6. Between October, 1976 and May, 1977 Defendants induced Beatrice Morrow to sign over to them her American Telephone and Telegraph Stock which was subsequently sold for the sum of $32,500.00.

"7. During said period of time Defendants induced Beatrice Morrow to sign over to them her United Income Stock which was subsequently sold by Defendants for $3,100.68.

"8. During said period of time the Defendants induced Beatrice Morrow to cash and transfer to them the proceeds from savings certificates held by her in joint tenancy with Defendants children in the total sum of $3,417.37.

"9. During said period of time Defendants obtained the sum of $2,614.09 from an account in which Beatrice Morrow had placed said sum in the names of Beatrice Morrow and Kenneth C. Morrow as joint tenants.

"10. During said period of time Kenneth C. Morrow obtained the proceeds of the Providence Savings Account in the sum of $225.79.

"11. Kenneth C. Morrow made a promise to Beatrice Morrow as to a material fact, to wit: that he would maintain her in his home for the rest of his life.

"12. At the time he made said promise Kenneth C. Morrow did not intend to perform it.

"13. Kenneth C. Morrow made said promise with the intent to defraud Beatrice Morrow.

"14. Beatrice Morrow was unaware of the Defendant's intention not to perform the promise.

"15. Beatrice Morrow acted on reliance upon said promise.

"16. Beatrice Morrow was justified in relying upon said promise.

"17. Beatrice Morrow was damaged as a result of her reliance upon said promise in the sum of $74,000.00.

"18. Kenneth C. Morrow was guilty of oppression and fraud.

## CONCLUSIONS OF LAW

"1. That plaintiff should have judgment against Defendants for general damages in

tering a summary judgment to break the rule

that inferences are *against* the moving party.

the sum of $74,000.00 and exemplary damages in the sum of $30,000.00, a total of $104,000.00 plus costs of suit.

"2. Defendants obtained the proceeds from the sale of the house in Missouri, from the sale of the Apple Valley property, the AT & T Stock, the United Income Stock, the savings certificates, and savings accounts, through undue influence.

"3. A constructive trust should be imposed upon 1) $30,000.00 in cash in Defendants' possession, 2) the five acres of real property in or near Kamiah, Idaho, including the improvements thereon, and building materials located upon or purchased to be used in home under construction thereon, 3) furniture and personal effects from the St. Joseph, Missouri home of Beatrice Morrow, and 4) the two-fifths (⅖) interest purchased in a Note secured by a Deed of Trust from Ed Austin to property in or near Brentwood, California. Said items of property should be turned over to the Plaintiff.

"4. That any and all property turned over to the Plaintiff, Conservator for Beatrice Morrow, should be credited against the judgment at actual value.

"Judgment is hereby ordered to be entered accordingly."

R., pp. 86–89.

### JUDGMENT OF THE CALIFORNIA SUPERIOR COURT, NO. 17614

"This action came on regularly for trial by jury on June 4, 1979 with Plaintiff, Robert W. Andre' appearing in person with William G. Polley, his attorney and Defendant Kenneth C. Morrow appearing in person with James W. Peterson, his attorney; a jury of twelve (12) persons was duly impanelled and sworn; witnesses testified; and after being duly instructed by the Court, the jury deliberated and thereon duly returned a special verdict which verdict is on file herein. Said jury verdict however was only advisory in that the relief sought is equitable.

"The Court having caused to be made and filed herein its written findings of fact and conclusions of law,

"IT IS ORDERED, ADJUDGED, AND DECREED that

"1. Plaintiff have judgment against the Defendants and each of them in the sum of $74,000.00 as and for general damages and in the further sum of $30,000.00 as and for exemplary damages plus actual costs of suit.

"2. That the Defendants hold the following property in trust for Plaintiffs: $30,000.00 in cash, five (5) acres of real property in or near Kamiah, Idaho, including improvements thereon and building materials located upon said real property or purchased to be used in the home under construction thereon, furniture and personal effects from the St. Joseph, Missouri home of Beatrice Morrow, a two-fifths (⅖) interest in that certain Note secured by a Deed of Trust from Ed Austin to property in or near Brentwood, California.

"3. That Defendants and each of them, deliver forthwith all of said property held in constructive trust to Plaintiff.

"4. That any and all property delivered to Plaintiff by Defendants be credited against this judgment at actual value.

"Date: June 20, 1979.

/s/ T.R. VILAS

JUDGE OF THE SUPERIOR COURT"